747 F.2d 472
 7 Soc.Sec.Rep.Ser. 176, Unempl.Ins.Rep. CCH 15,613
Stanley D. JOLLY, Appellant,
v.
Margaret HECKLER, Secretary of Health and Human Services, Appellee.
Stanley JOLLY, Appellant,
v.
Margaret HECKLER, Secretary of Health and Human Services, Appellee.
 No. 84-1180.
 United States Court of Appeals,
Eighth Circuit.
 Submitted July 3, 1984.
Decided Oct. 31, 1984.
 
 Larry W. Glenn, St. Louis, Mo., for appellant.
 Thomas E. Dittmeier, U.S. Atty., and Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee.
 Before HEANEY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Stanley D. Jolly appeals from a final judgment entered in the District Court for the Eastern District of Missouri. For reversal Jolly argues that the district court erred in holding that the date of onset of his disability for purposes of determining social security disability benefits was January 26, 1982, rather than June 15, 1978, as found by the administrative law judge (ALJ). For the reasons discussed below, we reverse the judgment of the district court and order the Secretary to award benefits retroactive to June 15, 1978.
 
 
 2
 Jolly first applied for social security disability benefits and supplemental security income (SSI) benefits on September 11, 1979. The Secretary in a final decision denied Jolly's application for benefits on March 4, 1981. The district court on appeal reversed the Secretary's decision and remanded the case for further proceedings. The district court found that the Secretary's resort to the Medical-Vocational Guidelines to direct a finding of no disability was inappropriate in light of Jolly's nonexertional impairments of dizziness, loss of hearing and alcoholism. On remand a qualified vocational expert testified that Jolly's dizzy spells occurred with sufficient frequency during working hours to prevent him from engaging in substantial gainful activity. Upon hearing this testimony and considering the medical evidence in the record, the ALJ made the following findings:
 
 
 3
 The medical evidence does not show that the claimant's conditions are attended by clinical findings that meet or equal in severity the requirements of Appendix 1, Subpart P, Regulations No. 4. However, the Administrative Law Judge finds that the claimant does have a sensorineural hearing loss which results in periodic total loss of hearing and recurring dizziness. The claimant's testimony and that of the other witnesses as to the frequency of these occurrences was credible, and is supported by medical findings which show a medical condition reasonably expected to produce these symptoms. The vocational expert testified that the frequency of the claimant's dizzy spells would render him unemployable. There is no evidence that the condition is remediable. The symptoms have persisted since June 15, 1978, the alleged onset date. The claimant's medically determinable impairments effectively render him incapable of any substantial gainful activity, including his past relevant work.
 
 
 4
 For these reasons, the Administrative Law Judge recommends that the claimant be entitled to a period of disability commencing on June 15, 1978, and to applicable disability insurance benefits. The disability continues through the date of this decision.
 
 
 5
 On November 30, 1982, the Appeals Council reversed this decision and concluded that Jolly was able to perform light and sedentary work. Jolly appealed to the district court, which reinstated the ALJ's award of benefits. The district court stated:
 
 
 6
 [W]hile the ALJ in this case found petitioner's disability to have commenced on June 15, 1978, such conclusion was not determined until after hearing the vocational expert testify on June 23, 1982. The hypothetical question posed to the vocational expert assumed facts in existence on that particular date. [The treating physician's] critical letter is dated February 26, 1982.
 
 
 7
 Accordingly, we have concluded that there is not substantial evidence to support the Secretary's findings that disability commenced on June 15, 1978. Rather, we find that substantial evidence dictates that the onset of claimant's disability be established at January, 1982, and that he be paid disability benefits therefrom. 42 U.S.C. Sec. 405(g).
 
 
 8
 Jolly v. Heckler, 578 F.Supp. 175, 178 (E.D.Mo.1984). The January 26, 1982 letter referred to in the district court's opinion stated that Jolly's increasing hearing loss and occasional vertigo were symptomatic of cochlear inner ear disease on a vascular basis.
 
 
 9
 The sole issue on appeal involves the date of onset of Jolly's disability.
 
 
 10
 On appellate review of a decision regarding disability benefits, our duty is to determine whether the decision is supported by substantial evidence in the record as a whole. Substantial evidence, in turn, means more than a scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
 
 
 11
 McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir.1983) (citations omitted). See 42 U.S.C. Sec. 405(g). After thoroughly reviewing the medical record and testimony adduced at the hearing, we conclude that the ALJ's finding that Jolly's disability commenced on June 15, 1978, was supported by substantial evidence. Jolly testified that he began experiencing dizziness and ringing in his ears sometime in 1976. These symptoms worsened until Jolly was forced to quit his job at a saw mill in June 1978. Jolly's condition was exacerbated by his alcoholism. He admitted himself to a Veterans' Administration hospital in July 1978 for treatment, and was in and out of the hospital until early August 1979. Auditory testing revealed a hearing loss in both ears. Subsequent tests revealed a degeneration of Jolly's hearing. While Jolly's illness was initially diagnosed as Meniere's disease, his treating physician became convinced that Jolly was suffering from a sensorineural hearing loss of cochlear etiology which was aggravated by alcohol addiction. According to Jolly's physician, the long term consequences of Jolly's illness were progression to near deafness and increasing frequency and severity of vertigo. The record supports this diagnosis. Therefore, the ALJ's finding that Jolly's disability commenced on June 15, 1978, was supported by substantial evidence in the record as a whole.
 
 
 12
 Accordingly, we reverse the judgment of the district court and order the Secretary to award benefits retroactive to June 15, 1978.
 
 
 13
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 14
 I respectfully dissent. Jolly recognizes that he bears the burden of establishing his disability. Celebrezze v. Bolas, 316 F.2d 498, 500 (8th Cir.1963). I believe that the district court properly ruled that there was insufficient evidence in the record to support the finding of the ALJ that disability commenced June 15, 1978.
 
 
 15
 Jolly testified at a hearing on August 6, 1980, that he began having dizzy spells and could no longer drive about June 1976, when he left a job with a moving van company. He stated that his condition then "wasn't as bad. I knew something was happening, but I didn't know--." He further stated that his condition had become worse since the summer of 1978. He testified that he presently would get dizzy and his ears would ring and there would be a buzzing and he would lose his balance. He further testified that he would have five or six such attacks a month, each lasting about fifteen minutes. I see nothing in this testimony that relates to disabling effects of Jolly's condition prior to the time of the hearing.
 
 
 16
 Other evidence in the record creates some question as to when the dizzy spells commenced. Jolly was hospitalized in the Veterans Administration hospital from July 17, 1978, to September 8, 1978, from October 20, 1978, to November 11, 1978, and from January 5, 1979, to March 6, 1979. The records in evidence before the ALJ of these three stays contain no mention of dizziness, even though Jolly's medical history, related primarily to his alcohol problems, is set out in full detail. The history quotes Jolly as saying that he "had been a truck driver until six months ago when he quit driving, started getting drunk."
 
 
 17
 Medical evidence of dizziness is found in the record first in a VA examination report, dated May 21, 1979, in which Jolly complained of dizziness and said he had been in two hospitals for the condition. He was told he had Meniere's disease, and a medication was prescribed. A report of June 4, 1979, records Jolly's complaints of dizziness and loss of balance. A record of June 11, 1979, shows that he complained that the medicine was not helping. It also contained a comment on Meniere's disease. On June 18 Jolly again complained of a dizzy spell and balancing problems, although he reported that the medication had reduced his dizziness. He was hospitalized from July 4, 1979, to August 10, 1979, and the records of this hospitalization mention Meniere's syndrome and state that Jolly's main focus seemed to be on the Meniere's syndrome and his inability to find employment. None of these records, however, contains evidence as to the frequency or duration, and thus the disabling effects, of Jolly's dizzy spells.
 
 
 18
 We are compelled to examine the record as a whole to determine if the finding as to the time of onset of Jolly's disability is supported by substantial evidence. Jolly's first testimony concerning the frequency of his dizziness, as discussed above, related to his condition as of August 6, 1980. The hypothetical question to the occupational specialist at a June 23, 1982, hearing was based on the employability of a person suffering three to four twenty-minute dizzy spells per week, a frequency which approximated Jolly's condition at that time. Giving the testimony the benefit of every doubt, I believe there is no substantial evidence in the record to support a finding of actual disability from any dizziness before the date of the first hearing, August 6, 1980.