Shelah COLE, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.

No. 86–1146.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1987.

Decided June 1, 1987.

A. Michael Jaffe, Southfield, Mich., Philip Chris Corts (argued), Cincinnati, Ohio, for plaintiff-appellant.

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., Blanca Bianchi de la Torre (argued), Dept. of Health and Human Services, Office of the Gen. Counsel, Chicago, Ill., for defendant-appellee.

Before MERRITT, WELLFORD and MILBURN, Circuit Judges.

WELLFORD, Circuit Judge.

Appellant Shelah Cole appeals from the district court order affirming the final decision of the Secretary of Health and Human Services denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. For the reasons that follow, we REMAND the case to the Secretary for further consideration.

Appellant, born on December 14, 1933, last worked as a material handler in the steel industry in 1974. Most of the material was lifted by hand, but some was transported by a hi-lo vehicle, which appellant operated approximately ten hours a week. Appellant stopped working in 1974 and was granted disability benefits in October 1974. The benefits were terminated in October 1981, and an ALJ affirmed the termination. Appellant never appealed that decision. In January 1984 appellant filed the current application for benefits, claiming disability on the basis of an enlarged heart, high blood pressure, asthma, arthritis, and a hernia. Although he alleged that he had been disabled since 1974, he conceded that this application was a "new application reflecting the period October 1981 through today." The Secretary denied benefits.

Cole testified at the administrative hearing that he suffers from numerous impairments. First, he suffers from chest pains that are sharp pains radiating down his left arm (Cole is left handed) and into his neck. These pains occur approximately three times a week and may be brought on by exertion or, according to Cole, sometimes when he is sitting doing nothing. He also suffers from asthma, shortness of breath, gout, hypertension, headaches, dizziness, arthritis, and a hernia. He attributes the headaches and dizziness to the hypertension.

The medical evidence included reports from two doctors. Dr. Ganesh, plaintiff's treating physician, stated in a report dated January 18, 1984 that Cole complained of chest pains, shortness of breath, severe headaches, and occasional nosebleeds. Dr. Ganesh noted blood pressure readings of 150/90 in December 1983; 150/110 in December 1983; and 150/90 in January 1984. Dr. Ganesh noted no reflex, sensory, or motor abnormalities and no limitation in the range of motion. Dr. Ganesh diag-

nosed uncontrolled hypertension, hypertensive cardiovascular disease, and arthritis. Dr. Ganesh concluded that "it is very difficult for the patient to perform any daily activity do [sic] to the nature of his illness."

Dr. Patel, an internist who examined Cole on March 5, 1984 at the Secretary's request, stated in his report that Cole complained of hypertension, headaches and dizziness, asthma, gout for which he takes Zyloprim, and low back pain. Cole indicated to Dr. Patel that he was taking Aldonet, Inderal, a water pill, Nitroglycerin for chest pain, and Motrin for his back. An x-ray of the lumbosacral spine showed lumbar osteoarthritis with narrowing of the L–5, S–1 disc space, but range of motion in lower back and knees was normal.

Dr. Patel determined that "clinically there was no evidence of congestive heart failure, asthma, or any peripheral vascular disease." A funduscopic examination revealed Grade 1 hypertensive changes and blood pressure of 160/108 on the right and 150/104 on the left. A resting EKG showed no significant abnormalities. During a five-minute stress test, Cole reached a heart rate of 154, and there was no significant elevation of blood pressure or ST changes. The stress test was discontinued when Cole complained of fatigue and shortness of breath. On the basis of his examination, Dr. Patel diagnosed uncontrolled hypertension, mild to moderate exogenous obesity, history of gout and chest pains more often with exertion, and recurrent lumbar myofascitis. Dr. Patel ruled out the possibility of mild anxiety state and angina pectoris.

Samuel Goldstein, a vocational expert, testified that appellant's prior work experience would be classified as somewhere between unskilled and semi-skilled, with an exertional level varying from light to heavy. Goldstein explained that the work as a hi-lo vehicle operator was the "skill" factor in the semi-skilled classification of the job. When asked if that work imparted "any skills which are transferable to any sedentary work," Goldstein responded, "skills ... involved with the general ve-hicle operating area." Two sedentary vehicle operating positions are in-plant jitney operator and messenger vehicle operator, the latter described as "people that basically drive a car all day." Goldstein testified that 5,500 sedentary vehicle jobs existed in the area, but only 2,750 jobs did not require exposure to cold weather. Responding to a hypothetical question, Goldstein testified that if Cole were found to suffer from dizziness, sweats, shortness of breath, high blood pressure, gout, and chest pains, "those findings would rule out any and all vehicle operating."

The ALJ concluded that Cole had not engaged in substantial gainful activity since 1974 and was unable to perform his past relevant work. He also concluded that Cole has severe chest pains and hypertension, but that Cole's testimony was exaggerated and Cole did not have an impairment or combination of impairments listed in the regulations. The ALJ determined that Cole had the residual functional capacity for the full range of sedentary work and that he had acquired transferable work skills that can be applied to the sedentary jobs of in-plant jitney driver or messenger vehicle operator. For these reasons, the ALJ found that Cole was not entitled to benefits.

Cole requested review by the Appeals Council and submitted reports from Mary Ann Johnson, a rehabilitation specialist, and Dr. Ganesh. Ms. Johnson characterized the job of material handler as "basically heavy, unskilled work," and noted that "operating a vehicle such as a high low would ... be generally considered within the semi-skilled range." Based on Cole's complaints of chest pain and dizziness, however, Ms. Johnson concluded that Cole would be precluded from operating a vehicle because of safety considerations.

Dr. Ganesh's report reflected examinations performed from December 1983 to June 1984. Dr. Ganesh observed that Cole was experiencing chest pains and dizziness. Blood pressure levels were 150/100 in December 1983, 160/110 in January 1984, and 140/100 in February 1984. Cole was taking various medications and prescriptions

for gout, for high blood pressure, and for his other complaints. An EKG, dated June 14, 1984, showed sinus bradycardia and left ventricular hypertrophy, and a chest x-ray, dated March 6, 1984, showed left ventricular enlargement. Dr. Ganesh diagnosed hypertensive cardiovascular disease, uncontrolled hypertension, hernia, and gout. He concluded that Cole "is totally disabled and cannot work or be engaged in any gainful operation."

After considering these two reports, the Appeals Council affirmed the ALJ's decision, which became the final decision of the Secretary. The magistrate, on referral of the case, recommended that the Secretary's decision be reversed, finding that "the ALJ's determination that plaintiff had transferable skills is erroneous as a matter of law" because the qualities involved in operating a hi-lo are aptitudes rather than skills. The district court rejected the magistrate's recommendation, finding substantial evidence to support the Secretary's decision.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Secretary's decision is limited to determining whether substantial evidence exists in the record as a whole to support the decision. The reviewing court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). "Substantiality of the evidence must be based upon the record as a whole" and " 'must take into account whatever in the record fairly detracts from its weight.' " *Garner*, 745 F.2d at 388

(quoting *Beavers v. Secretary of Health, Education & Welfare*, 577 F.2d 383, 387 (6th Cir.1978)).

■ Once the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Secretary to establish that the claimant retains the residual functional capacity to perform "substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986); *see also Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985). Substantial evidence must support a finding that the claimant has the vocational qualifications to perform specific jobs. *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). The Secretary may meet this burden by reference to the medical vocational guidelines ("the grids") unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations. *Damron v. Secretary of Health & Human Services*, 778 F.2d 279, 281–82 (6th Cir.1985).

In this case Cole testified that he suffers chest pain and hypertension accompanied by shortness of breath, dizziness, and headaches. The ALJ, however, described Cole's complaints of chest pain as exaggerated, explaining that "[w]hile [appellant] stated that chest pain occurs not only upon exertion or excitement, but at rest also, [Dr. Ganesh's] report indicated that [appellant] experiences chest pain upon exertion or excitement only." Dr. Ganesh's report indicated that Cole's chest pains may be "brought on" by activity or exertion, but did not mention that Cole suffers chest pain while resting. Moreover, Dr. Patel indicated that Cole has a "[h]istory of chest pains, more often with exertion."

The ALJ further found appellant's testimony generally not persuasive, explaining that while appellant testified that he does minimal driving, he also testified that his car, a 1979 vehicle, has 28,000 miles on it. The ALJ does not seem to have considered, however, that three other individuals in appellant's family could have driven the car. The record, moreover, does not indi-

cate the mileage of the car when it was purchased. On remand, the Secretary should analyze the amount of driving customarily done by Cole more carefully and whether there is any inconsistency in Cole's testimony in this respect. The extent to which Cole is able to drive a car may indicate whether he can perform the sedentary job of messenger vehicle operator.

▮ In light of Judge Milburn's dissent, the Secretary should reconsider whether Cole has the residual functional capacity to perform any sedentary vehicle operation position. In determining whether Cole has residual functional capacity to perform specific jobs, the Secretary may not apply the "grids" if Cole suffers from "nonexertional" impairments. *See, e.g., Damron,* 778 F.2d at 282; *Kirk v. Secretary of HHS,* 667 F.2d 524, 528 (6th Cir. 1981). A nonguideline determination is required only if "the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level...." *Kirk,* 667 F.2d at 528–29; *see also Kimbrough v. Secretary of HHS,* 801 F.2d 794, 796 (6th Cir.1986). A mere allegation of a nonexertional limitation is not sufficient to preclude application of the grid; the determining factor is whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of sedentary work. *Kimbrough,* 801 F.2d at 796; *Kirk,* 667 F.2d at 537. In this case, the Secretary must determine on remand whether Cole has nonexertional impairments and, if so, whether they are significant enough to prevent Cole from performing a full range of sedentary work at a designated level. We note that we have traditionally considered the term "nonexertional" to encompass mental, sensory, or environmental limitations. *See, e.g., Kimbrough,* 801 F.2d at 795 (mental); *Damron,* 778 F.2d at 282 (environmental); *see also* 20 C.F.R. § 404, Subpart P, Appendix 2 (referring to nonexertional limitations as mental, sensory, or environmental).[1]

▮ The plaintiff would seem to maintain that mere assertions of pain or dizziness, if supported in any fashion by objective medical evidence, should be considered as indicating a nonexertional limitation, precluding application of the grid. This court has not adopted this position. *See Kimbrough,* 801 F.2d at 796, 797. The claim of nonexertional impairment must indicate a significant or severe limitation precluding the ability (in this case) to do sedentary work. Pain can be disabling, but only if it is found to be a credible claim and if it establishes an inability to be gainfully employed.[2]

▮ If Cole's medical conditions do not preclude the sedentary work at issue, the question whether he has "transferable skills" arises. A person of advanced age

---

1. We are not prepared to accept the Third Circuit's conclusory characterization of dizziness and chest pains in the particular context of the case before it as "nonexertional." *See Green v. Schweiker,* 749 F.2d 1066, 1072 (3d Cir.1984).

*Warmoth v. Bowen,* 798 F.2d 1109, 1112 (7th Cir.1986), cited as authority for plaintiff's nonexertional pain contention, acknowledged that the grid was to be used "as a framework" in cases involving a nonexertional claim unless this kind of impairment would "substantially reduce a range of work." The plaintiff there acknowledged his capacity to do sedentary work.

*Bellamy v. Secretary,* 755 F.2d 1380 (9th Cir. 1985), involved dizziness, *fainting spells,* and pain accompanying a severely fractured leg. *Channel v. Heckler,* 747 F.2d 577 (10th Cir. 1984), involved similar claims, and in addition, skin impairments and "postural/manipulative disability", which are specifically listed in the regulations as constituting nonexertional impairments. *See id.* at 578, 580; 20 C.F.R. § 404.1545(d). *Allen v. Secretary,* 726 F.2d 1470, 1472 (9th Cir.1984), refers to a "significant non-exertional limitation, such as a mental impairment or the inability to tolerate certain work environments." These claims of nonexertional limitation expressed in the cases above (except *Green* ) are of the usual mental, sensory or environmental limitation type, and go well beyond Cole's claims in this case of pain and dizziness.

2. A prior panel has determined that "we do not consider pain alone to be a nonexertional limitation that defeats the application of the grid.... A nonexertional limitation must be severe enough to restrict a full range of gainful employment at the designated level." *Marcano v. Secretary,* 812 F.2d 1407 (6th Cir.1987) (unpublished per curiam), citing *Kirk v. Secretary of HHS,* 667 F.2d 524, 538 (6th Cir.1981).

who is limited to sedentary work is considered disabled even if his prior work were semi-skilled if he has no transferable skills. *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (citing Rule 201.02). The ALJ found that Cole's experience operating the hi-lo gave him acquired, transferable skills applicable to the in-plant vehicle and messenger jobs. The magistrate disagreed, ruling this finding erroneous as a matter of law.

The question is whether Cole has "transferable *skills*" or merely an aptitude for the jobs of in-plant vehicle operator or messenger. An aptitude is an inclination, natural ability, or capacity to learn; a "skill" is a learned ability to do a specific job. *See, e.g., Ellington v. Secretary of HHS*, 738 F.2d 159, 161 (6th Cir.1984); *Richardson*, 735 F.2d at 964; *Weaver v. Secretary of HHS*, 722 F.2d 310, 311 (6th Cir.1983). We have found, for example, that independence of judgment, responsibility for a work product or production standard, ability to use hand tools, and manual dexterity are aptitudes rather than transferable skills. *See Ellington*, 738 F.2d at 161; *Richardson*, 735 F.2d at 964; *Weaver*, 722 F.2d at 311.

The hi-lo vehicle Cole operated before leaving work in 1974 has both hand controls and pedals, with forks on the front for lifting materials. The vocational expert testified that operating a hi-lo is considered semi-skilled activity. The vocational expert's response to whether the skills involved were "transferable" does not clearly set out the problem of separating "skill" from "aptitude." He only stated that the skills present are "those involved with the general vehicle operating area." Whether operating a hi-lo vehicle imparts transferable skills was discussed in *Morgan v. Secretary of HHS*, 664 F.Supp. 273, No. 85–CV–74290–DT (E.D.Mich.1986). The *Morgan* court determined that "knowledge of how to operate a hi-lo" is a "skill," but not a skill that is transferable to any job other than another hi-lo job. Slip op. at 277. The other abilities involved in driving a hi-lo—hand-foot-eye coordination and moving materials—were not considered "skills" but "aptitudes." *Id. Accord, Stamps v. Sec-*retary of HHS*, 633 F.Supp. 101, 108 (E.D. Mich.1985).

In this case, the skills necessary to operate an in-plant vehicle are not clear from the record. If only hand-foot-eye coordination, moving materials, and general responsibility are involved, no "skills" are involved. If, on the other hand, Cole learned a specific skill or skills as a hi-lo operator that are particularly applicable to the in-plant vehicle, then Cole may be considered to have "transferable skills." We REMAND this case for the Secretary to determine whether Cole's job imparted transferable "skills" or merely aptitudes, as these terms have been defined in this Circuit.

Finally, the Secretary must determine on remand the date on which eligibility for benefits, if Cole were determined eligible, begins. The record presented on this appeal indicates that benefits, if awarded, should begin no earlier than January 1983, because the record contains no medical evidence of disability before 1983. Cole has the burden of presenting evidence of his medical condition establishing eligibility for benefits before that date.

For the foregoing reasons we REMAND to the Secretary for further consideration and determination of eligibility, if any, consistent with this opinion.

MILBURN, Circuit Judge, dissenting.

Because I believe that the correct approach would be to remand this case to the Secretary for an award of benefits, I respectfully dissent.

Once it was established that plaintiff cannot perform his past relevant work, the burden shifted to the Secretary to show that plaintiff retains the residual functional capacity to perform "substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986); *see also Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir.1985). There must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *O'Banner v. Secretary of Health, Education & Welfare*, 587 F.2d 321, 323

(6th Cir.1978); *see also Richardson v. Secretary of Health and Human Services,* 735 F.2d 962, 964 (6th Cir.1984) (per curiam). The Secretary may meet this burden by reference to the medical vocational guidelines ("the grids") unless plaintiff suffers from nonexertional limitations which significantly limit the range of work permitted by his exertional limitations. *See Bapp,* 802 F.2d at 604–05; *Day v. Heckler,* 781 F.2d 663, 664–65 (8th Cir.1986); *Damron v. Secretary of Health & Human Services,* 778 F.2d 279, 281–82 (6th Cir.1985); *Tucker v. Heckler,* 776 F.2d 793, 795–96 (8th Cir.1985); *Francis,* 749 F.2d at 1566–67; *Channel v. Heckler,* 747 F.2d 577, 580–81 (10th Cir.1984) (per curiam).

The ALJ found that plaintiff suffers from "severe chest pain and hypertension." The ALJ's finding is supported by plaintiff's testimony that he suffers severe chest pain and hypertension accompanied by dizziness and headaches. Plaintiff's testimony was corroborated by Dr. Ganesh's diagnosis of hypertension and hypertensive cardiovascular disease and his observation of plaintiff's experiencing chest pain and dizziness. Plaintiff's testimony was further corroborated by Dr. Patel's diagnosis of uncontrolled hypertension and his observation of plaintiff's experiencing chest pain.

Although the ALJ found that plaintiff suffers "severe chest pain," he described plaintiff's complaints of severe chest pain as exaggerated. The ALJ explained that "[w]hile [plaintiff] stated that chest pain occurs not only upon exertion or excitement, but at rest also, [Dr. Ganesh's] report indicated that [plaintiff] experiences chest pain upon exertion or excitement only." Dr. Ganesh's report, however, indicates that plaintiff's chest pain may be "brought on" by activity or exertion, but in no way precludes the possibility that plaintiff suffers chest pain while resting. The ALJ further found plaintiff's testimony generally not persuasive, explaining that while plaintiff testified that he does minimal driving, he also testified that his car, a 1979 vehicle, has 28,000 miles on it. There is, however, no inconsistency in this testimony in light of the fact that there were three other individuals in plaintiff's family who could have driven the car and the fact that the record does not reveal the mileage on the car when it was purchased. Therefore, the ALJ's credibility determination is not supported by substantial evidence and should be overturned. *See Hardin v. Heckler,* 795 F.2d 674, 676 (8th Cir.1986); *King v. Heckler,* 742 F.2d 968, 974–75 (6th Cir.1984).

But regardless of the ALJ's credibility determination, it is undisputed that plaintiff suffers severe chest pain and hypertension accompanied by headaches and dizziness. Pain and dizziness are nonexertional limitations. *Bolton v. Bowen,* 814 F.2d 536 (8th Cir.1987) (pain and dizziness are nonexertional limitations); *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985) (pain is a nonexertional limitation); *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985) (per curiam) (pain is a nonexertional limitation); *Pettijohn v. Heckler,* 759 F.2d 669, 670 (8th Cir.1985) (per curiam) (chest pain may be a nonexertional limitation); *Bellamy v. Secretary of Health & Human Services,* 755 F.2d 1380, 1383 (9th Cir.1985) (pain and dizziness are nonexertional limitations); *Green v. Schweiker,* 749 F.2d 1066, 1072 (3d Cir.1984) (per curiam) (dizziness and chest pain are nonexertional limitations); *Channel v. Heckler,* 747 F.2d 577, 580 (10th Cir.1984) (per curiam) (dizziness and pain are nonexertional limitations); *Jolly v. Heckler,* 747 F.2d 472, 473 (8th Cir.1984) (dizziness is a nonexertional limitation); *Odle v. Heckler,* 707 F.2d 439, 440 (9th Cir.1983) (dizziness is a nonexertional limitation); *Kreie v. Bowen,* 656 F.Supp. 765 (D.Kan.1987) (dizziness is a nonexertional limitation); *Fields v. Harris,* 498 F.Supp. 478, 492 (N.D.Ga.1980) (dizziness is a nonexertional limitation).

The majority erroneously defines "nonexertional" as encompassing only mental, sensory, and environmental limitations. The residual functional capacity categories in the grids are based upon the physical exertion requirements of jobs in the economy and, therefore, the grids consider only impairments that result in exertional or strength limitations. *Channel,* 747 F.2d at

580 (citing 20 C.F.R. § 404.1567). "[A] claimant's placement in a particular category depends on his 'ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, [and] handling.'" *Id.* (quoting 20 C.F.R. § 404.-1545(b)). There are, however,

> "[s]ome medically determinable impairments, such as skin impairments, epilepsy, and impairments of vision, hearing or other senses, postural and manipulative limitations, and environmental restrictions [that] do not limit physical exertion." ... Mental impairments, such as the "ability to understand, to carry out and remember instructions and to respond appropriately to supervision, co-workers and work pressures in a work setting," ... are likewise nonexertional....

*Id.* (quoting 20 C.F.R. § 404.1545(c), (d)). The regulations mention mental, sensory, and environmental limitations only by way of example and do not dictate that other limitations which affect more than physical exertion may not be considered nonexertional. *Id.; see also McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir.1982).

The ALJ found that plaintiff's nonexertional limitations do not significantly limit his ability to perform a full range of sedentary work. The ALJ's finding is not, however, supported by any evidence in the record. The evidence relevant to whether plaintiff's capacity to perform sedentary work is significantly limited by his nonexertional limitations consists of Mr. Goldstein's testimony and Ms. Johnson's report. Mr. Goldstein, when asked to consider plaintiff's chest pains, high blood pressure, shortness of breath, dizziness, and gout, testified that plaintiff could not engage in any vehicle operating. Ms. Johnson reported that plaintiff's chest pains and dizziness would preclude vehicle operating as a realistic occupation.

The ALJ erred in relying on the grids in the presence of plaintiff's significant nonexertional limitations. *See Green,* 749 F.2d at 1072 (court held that the ALJ erred in applying grids where the claimant suffered nonexertional impairments; namely, chest pains and dizziness); *see also Warmoth v. Bowen,* 798 F.2d 1109, 1112 (7th Cir.1986) (per curiam) (court held that reliance on the grids requires "reliable evidence of some kind" that the claimant's nonexertional limitations "do not significantly diminish the employment opportunities otherwise available"); *Bellamy,* 755 F.2d at 1383 (court held that ALJ erred in relying on grids where the claimant suffered significant nonexertional impairments, primarily dizziness); *Channel,* 747 F.2d at 582 (court held that absent a finding, supported by substantial evidence, that the claimant's nonexertional impairments do not limit the range of jobs available to plaintiff, reliance on the grids is improper); *Allen v. Secretary of Health & Human Services,* 726 F.2d 1470, 1472–73 (9th Cir.1984) (court held reliance upon grids improper where the ALJ's conclusion that the claimant's nonexertional limitations were not significant was not supported by substantial evidence). The majority would remedy this error by remanding to the Secretary to determine once again whether plaintiff's nonexertional limitations are significant enough to prevent plaintiff from performing a full range of work at the designated level. It is unreasonable in my view to give the Secretary another chance to consider this issue because, given the evidence of record, the administrative proceeding would only further delay an award of benefits. *See Podedworny v. Harris,* 745 F.2d 210, 222–23 (3d Cir.1984).

Where the Secretary has failed to establish that the claimant's nonexertional limitations are not significant, "the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics." *Tucker,* 776 F.2d at 795–96; *see also Bapp,* 802 F.2d at 606; *Damron,* 778 F.2d at 282; *Channel,* 747 F.2d at 581–82. Mr. Goldstein's responses to the hypothetical questions posed by the ALJ do not support a finding that there are jobs in the economy which plaintiff can perform given his present condition. A vocational expert's responses to hypothetical questions may constitute substantial evidence

only if the questions posed accurately portray the claimant's impairments. *See Pendley v. Heckler,* 767 F.2d 1561, 1562–63 (11th Cir.1985) (per curiam); *Podedworny,* 745 F.2d at 218; *Wallace v. Secretary of Health & Human Services,* 722 F.2d 1150, 1155 (3d Cir.1983) (per curiam); *McMillian v. Schweiker,* 697 F.2d 215, 221 (8th Cir. 1983) (per curiam). The ALJ's hypothetical, to which Mr. Goldstein responded that there are jobs in the economy which plaintiff can perform, did not mention plaintiff's chest pains or hypertension. Mr. Goldstein, when asked to consider plaintiff's hypertension, dizziness, and chest pain, responded that plaintiff could not perform the jobs previously identified. Since there is no other evidence in the record that would support a finding that plaintiff is capable of performing specific jobs in the economy, the Secretary has failed to carry his burden of proof and benefits should be awarded. *See Woods v. Secretary of Health & Human Services,* 808 F.2d 506, 507 (6th Cir.1987); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986).

Even if the Secretary's failure to discharge his burden of proof did not require a finding that plaintiff is disabled, a finding that plaintiff is disabled would still be required by the grids. The grids provide that a person restricted to sedentary work who is age fifty to fifty-four, and whose education does not permit direct entry into skilled work, must be found disabled unless he has acquired transferable skills as a result of his past work. 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14.[1] Skills will be considered transferable when the skilled or semiskilled work activities performed in past work can be used to meet the skilled or semiskilled work activities of other jobs. 20 C.F.R. § 404.1568(d)(1). Skills relate to vocationally significant work activities, 20 C.F.R. §§ 404.1565(a), 404.1568, and are distinguishable from aptitudes which relate to the basic work activities necessary to do most jobs. 20 C.F.R. § 404.1521(b). *See Ellington v. Secretary of Health & Human Services,* 738 F.2d 159, 160–61 (6th Cir.1984); *Weaver v. Secretary of Health & Human Services,* 722 F.2d 310, 311 (6th Cir.1983). Terms such as "alertness," "coordination," and "dexterity" describe aptitudes or abilities rather than acquired skills. *See Podedworny,* 745 F.2d at 220; *Ellington,* 738 F.2d at 160–61; *Weaver,* 722 F.2d at 311–12.

The ALJ, in concluding that plaintiff's prior work imparted transferable skills, relied upon the testimony of Mr. Goldstein, the vocational expert. Mr. Goldstein opined that plaintiff's prior work as a high-low operator resulted in plaintiff's acquiring "skills" in the "general vehicle operating area" which were transferable to "sedentary vehicle operating positions" such as in-plant jitney driver and sedentary messenger vehicle operator. Although Mr. Goldstein did not identify what qualities fell within the "general vehicle operating area," these qualities would include the ability to use hands and feet dexterously, hand-eye-foot coordination, manipulative abilities, and spacial perception. *See Podedworny,* 745 F.2d at 219–20 (operation of crane involved similar qualities); *Morgan v. Secretary of Health & Human Services,* 664 F.Supp. 273, at 277, No. 85–CV–74290–DT (S.D.Mich.1986) (operation of high-low involved similar qualities). "These qualities are abilities and aptitudes necessary in nearly all jobs, ... rather than the work skills that may support a finding of transferability." *Podedworny,* 745 F.2d at 220; *see Ellington,* 738 F.2d at 160–61; *Weaver,* 722 F.2d at 311–12; *Morgan,* 664 F.Supp. at 277. Since the ALJ's determination that plaintiff's prior work as a high-low operator imparted transferable skills is not supported by substantial evidence, a finding of disability is required by the grids. Rule 201.14, Table No. 1 of Appendix 2, Subpart 2; *Richardson,* 735 F.2d at 964.

Accordingly, I would reverse and remand with instructions that the district court remand to the Secretary for an award of benefits from the onset date of plaintiff's disability. I would leave to the Secretary

---

1. Plaintiff's age, educational level, and the skill level of his previous job are undisputed.

the determination of the appropriate onset date.