865 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Josephine JANIK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1709.
 United States Court of Appeals, Sixth Circuit.
 Dec. 14, 1988.
 
 Before WELLFORD and BOGGS, Circuit Judges, and CHARLES R. SIMPSON, III, District Judge.*
 PER CURIAM.
 
 
 1
 Janik appeals the Secretary's denial of Disability Insurance benefits. She claims that the Secretary erred in finding that, although she claims that her bilateral thrombophlebitis requires that she elevate both of her legs simultaneously throughout the day, Janik is able to perform a wide range of sedentary work. She claims that the opinion of a vocational expert secured by her attorney after the ALJ made his decision but before a decision by the Appeals Council demonstrates that she is not able to work at all. We disagree, and affirm the Secretary's decision.
 
 
 2
 * Janik is 38 years old, and a high school graduate who has worked at various jobs, the last being ten years of employment at the Fleetwood Automobile Plant doing physically demanding general assembly work, as well as operating a power sewing machine. At times, she had to lift as much as 100 pounds. She stopped working in 1979 because of thrombophlebitis, a condition which began in 1978. After she stopped working, she was able to attend school part-time over a seven-year period. She attained a nursing degree in 1984, becoming a registered nurse. She accomplished this with the assistance of the Michigan Department of Vocational Rehabilitation. She testified that, while she was attending school, she was allowed to elevate both of her legs on chairs.
 
 
 3
 After obtaining her degree and passing her licensing exam, she tried to work at Outer Drive Hospital in February 1985, but swelling, pain and tenderness in her lower legs force her to stop work after only five or six weeks. She testified that her attendance was poor even though her job was part-time, on the midnight shift, which required less exertion, and allowed her time to sit and elevate her legs.
 
 
 4
 Janik claims that she cannot stand for more than 30-45 minutes, and testified that she has not required frequent hospitalization. She has been raising five children by herself since her marital separation in April 1983. She does housework, drives a car, crochets, and visits with friends. Janik's insured status expired on June 30, 1984, so she must prove that she was disabled before that date to be eligible for benefits.
 
 
 5
 Dr. Damiani, who treated her initially in 1978, reported that Janik manufactured and elaborated many of her symptoms, and refused many forms of treatment. She claimed to be anorexic, but was seen taking food off mobile carts in the gift shop and did not lose weight during this hospital visit.
 
 
 6
 Dr. Kaplan examined Janik on September 10, 1979, and saw no venous abnormalities. Dr. Sil examined her on September 19, 1979, and found no venous problems, no edema, no ulceration or discoloration of her legs. He found that she manifested no indication of any sort of phlebitis, either superficial or deep.
 
 
 7
 Janik's treating physician from 1979 through 1985 was Dr. Asuncion, a specialist in vascular medicine. On October 30, 1982, he examined Janik and found some left calf tenderness, but no other abnormalities. On December 3, 1983, before the expiration of Janik's insured status, Dr. Asuncion stated that he had been asked to write a letter on her behalf, and that her condition, which required anti-coagulation therapy, bed rest and leg elevation, "seriously effects [sic] her ability to perform any occupational duties, since she is unable to walk or stand for any prolonged period." He further stated that when her condition flares up, she requires pain medication. On September 27, 1985, Dr. Asuncion completed a questionnaire sent to him by the Secretary, on which he stated that if Janik's condition were in remission, he saw no reason why she could not work. However, he indicated that he had not examined Janik since February 1985.
 
 
 8
 On April 9, 1984, Janik gave birth to a baby. Dr. Hole reported that her delivery was uneventful, but that her post-operative stay was complicated with phlebitis. Dr. Watson, who treated Janik after the birth, found abnormal firmness of the right calf, but found no other abnormalities. Dr. Hole's follow-up report of August 14, 1985, reveals no findings of edema, ulcerations, venous varicosities or other abnormalities.
 
 
 9
 On February 25, 1986, a diagnostic, noninvasive phleborheographic laboratory test showed normal arterial pulsations. There was no evidence of acute venous thrombosis in the deep veins in the lower extremities on either side.
 
 
 10
 The ALJ denied benefits. At the hearing which Janik requested, and at which the ALJ considered the evidence de novo, the ALJ did not take vocational testimony. However, the ALJ stated that her impairment did not meet the listings, and that not all her complaints were supported by the objective medical evidence. He found that she could not perform her past relevant work as an automotive assembly worker, but that, considering her age, education, and residual functional capacity, under the grids, or medical-vocational guidelines, she was not disabled. 20 C.F.R. Part 404, Subpart P. Appendix 2, Table No. 1, Rule 201.28.
 
 
 11
 After the ALJ's decision, but before the decision of the Appeals Council, Janik's attorney had her evaluated by Samuel Goldstein, Chief of Professional Services at Rehabilitation Consultants, Inc. Janik claims that Mr. Goldstein is a vocational expert often called upon by the Secretary for expert opinions. In his report, Goldstein stated that, if Janik's testimony that she has to elevate her legs simultaneously on a frequent basis during the day, for a total of anywhere from 40 to 90 minutes, was taken as true, there was no type "of work or training for which she would be reasonably and realistically qualified." However, he made no determination regarding her credibility. The Appeals Council, which reviewed all of the evidence including Goldstein's report, affirmed the ALJ's decision.
 
 
 12
 Both a magistrate and the district judge found that substantial evidence supported the Secretary's determination that Janik could perform sedentary work. For reasons explained below, we agree.
 
 II
 
 13
 On appeal, Janik claims that her condition, which requires frequent elevation of both legs simultaneously, renders her disabled. The Secretary argues, on the other hand, that substantial evidence supports the ALJ's determination that Janik is not entirely credible, and that she can perform a wide range of sedentary work.
 
 
 14
 * In social security cases, the "ALJ's findings are not to be overturned unless there is no substantial evidence supporting such conclusions. 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)), cert. denied, 461 U.S. 957 (1983). Further, as the trial judge noted, an "[a]dministrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir.1984).
 
 B
 
 15
 To maintain a claim for disability benefits, a claimant must not be engaged in substantial gainful activity; must have an impairment; and the impairment must be severe--i.e., it must significantly limit the ability to work. Further, the impairment must be expected to last at least twelve months; and the impairment or combination of impairments must equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment does not meet a listing, the claimant must no longer be able to perform past relevant work, or, in the alternative, any other substantial gainful activity which exists in the national economy. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The issue here concerns only the last element of the above analysis, whether Janik can perform any substantial gainful activity. Ibid.
 
 
 16
 Thus, we must determine whether there is substantial evidence to support the Secretary's finding that Janik retains the residual functional capacity to perform a wide range of sedentary work, as the ALJ found and the Appeals Council and district court agreed. Even in the closest of cases, any uncertainties must be resolved in favor of the ALJ, who is "peculiarly suited to ... gauge the demeanor of the witnesses." Kirk, 667 F.2d at 537.
 
 
 17
 Janik contends that her chronic thrombophlebitis, and the pain associated with that condition, render her disabled to perform any work. When exertional and non-exertional impairments exist, as is alleged her, the Secretary cannot meet the burden of showing residual functional capacity by reference to the "grids," or medical vocational guidelines. Cole v. Secretary of HHS, 820 F.2d 768, 771 (6th Cir.1987). Janik's allegations of pain seek to establish the existence of a non-exertional impairment which renders the "grids" inapplicable. This would require the Secretary to show that the "claimant has the vocational qualifications to perform specific jobs ... which exist in the national economy." Cole, 820 F.2d at 771. This is usually done through testimony of a vocational expert. O'Banner v. Secretary of HEW, 587 F.2d 321, 323 (6th Cir.1978).
 
 
 18
 In the present case, the ALJ concluded that Janik's subjective complaints of pain were not supported by objective medical evidence, and, thus, she had no non-exertional impairment rendering the "grids" inapplicable. The leading case in this jurisdiction on evaluating a claimant's credibility with respect to complaints of pain is Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir.1986). There, this court announced a two-part test for assessing subjective claims of pain. First, the court should determine if there is objective medical evidence of an underlying medical condition. Id. at 853. Here, there is an underlying medical condition; the existence of an ailment is not in dispute. However, the court must then determine "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Ibid. Here, there is the testimony of Dr. Asuncion that, before the expiration of her insured status, Janik had begun anti-coagulation therapy, and needed bed rest and leg elevation. He stated that, when she has a flare-up of her condition, she requires pain medication. In answering a hypothetical question as part of a questionnaire sent to him by the Secretary, he opined that if her condition were in remission, there was no reason why she could not work. However, he had not examined Janik in at least seven months before answering the questionnaire, and did not express an opinion as to whether, in fact, her condition was in remission.
 
 
 19
 Janik has an ambiguous history regarding her veracity and ambition. On the one hand, Dr. Damiani, who treated Janik in 1978, said that she manufactured many of her symptoms and refused many forms of treatment. Although she claimed to be anorexic, she was seen taking food off of mobile carts in the gift shop and did not lose any weight during this particular hospital visit. On the other hand, there is testimony that her condition after delivery of her baby in April 1984 was marked by phlebitis. In addition, Janik sought vocational rehabilitation, spending seven years studying to become a registered nurse.
 
 
 20
 The Appeals Council stated that it had considered the additional testimony of Mr. Goldstein, the vocational expert, but saw no grounds for reversing the ALJ's decision. The Council stated that "on or before June 30, 1984 [date of expiration of insured status], the evidence does not reveal that you had or expected to have phlebitis for 12 or more continuous months." It based this finding largely on Dr. Asuncion's statements regarding Janik's ability to work when her condition was in remission, concluding that the doctor thought that her condition would "come and go."
 
 
 21
 This court has held that "credibility determinations with respect to subjective complaints of pain rest with the ALJ." Siterlet v. HHS, 823 F.2d 918, 921 (6th Cir.1987) (citing Kirk, 667 F.2d at 538). Because "the ALJ had the opportunity to observe the demeanor of the [claimant], his conclusions with respect to credibility 'should not be discarded lightly.' " Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir.1984) (citing Beavers v. Secretary of HEW, 577 F.2d 383, 387 (6th Cir.1978)). In addition, although Dr. Asuncion, in his initial letter to the Secretary, opined that Janik's condition "seriously effects [sic] her ability to perform any occupational duties," "the ultimate determination of disability rests with the Secretary, not with the treating physician. Accordingly, the Secretary is not bound by a treating physician's conclusory statement." Duncan, 801 F.2d at 855 (citations omitted).
 
 
 22
 Although the "preferred method" of determining whether a claimant has the residual capacity to perform work which exists in the national economy is "testimony by a vocational expert," such testimony is not per se required. O'Banner, 587 F.2d at 323. And even if a vocational expert testifies, it is still left to the ALJ to "evaluate the vocational capacity of a claimant to perform the available jobs...." Ibid. Mr. Goldstein's answers to hypothetical questions regarding Janik's capacity to work if her condition were in remission should be taken into account in weighing the evidence, as they were by the Appeals Council. However, such answers do not vitiate the presumptive correctness of the ALJ's credibility determinations, Houston, 736 F.2d at 367, nor do they expand this court's authority on review. Baker, 730 F.2d at 1150.
 
 
 23
 We therefore find that there was evidence substantial enough to support the Secretary's decision to deny benefits in this case. Thus, we AFFIRM.
 
 
 
 *
 The Honorable Charles R. Simpson III, United States District Judge for the Western District of Kentucky, sitting by designation