894 F.2d 1337
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas J. ZIEGLER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health & Human
Services, Defendant-Appellee.
 No. 89-1708.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1990.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Thomas J. Ziegler appeals from the district court order affirming the Secretary of Health and Human Services' determination that he was not disabled and, therefore, not entitled to disability insurance benefits. For the following reasons we affirm the district court's judgment.
 
 I.
 
 2
 Claimant Ziegler was born on August 29, 1938. He completed the 10th grade of high school and then obtained a GED (Graduate Equivalent Degree) certificate while in the service in 1957. Claimant worked as a short haul commercial truck driver from 1961 to 1984, when he twisted his right knee in a truck accident.
 
 
 3
 On May 17, 1985, claimant filed a claim for disability insurance benefits, alleging a disability onset date of April 13, 1984 due to back and knee problems. Ziegler's claim was denied initially and upon reconsideration. Ziegler requested a hearing before an Administrative Law Judge (ALJ), which was held on December 17, 1985. The ALJ determined that claimant was not disabled; although claimant suffered from a severe impairment, he retained the residual functional capacity to perform a full range of sedentary work. Ziegler requested review by the Appeals Council and submitted additional medical evidence concerning a mental impairment. On June 19, 1986, the Appeals Council remanded the case to the ALJ to obtain a consultative psychiatric examination with psychological testing and for completion of a Psychiatric Review Technique form.
 
 
 4
 On July 8, 1987, the ALJ held a second administrative hearing. John Caknipe, Ed.D., a vocational expert appeared and testified. The ALJ again found that claimant retained the residual functional capacity to perform sedentary work. Pursuant to application of the medical-vocational guidelines, the ALJ found that claimant was not disabled. This determination was upheld by the Appeals Council on June 29, 1988, and thus became the final decision of the Secretary. Claimant appealed to the United States District Court for the Eastern District of Michigan. A United States Magistrate prepared a report and recommendation upholding the denial of benefits. The district court adopted the magistrate's recommendation and on April 17, 1989, issued an order affirming the Secretary's denial of benefits. Claimant timely filed this appeal.
 
 II.
 
 5
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 2058, 1059 (6th Cir.1983) (per curiam).
 
 
 6
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Secs. 423(d). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Sec. 404.1520(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Sec. 404.1520(c). Since the ALJ found that Ziegler had not worked since 1984 and that he suffered from a severe impairment, further inquiry was necessary. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Sec. 404.1520(d). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Ziegler did not suffer from one of the listed impairments. In such a case, assuming the individual has previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Sec. 404.1520(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant case, the ALJ found that Ziegler was not capable of returning to his particular occupation.
 
 
 7
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical vocational guidelines. Kirk, 667 F.2d at 528-29. See 20 C.F.R. Pt. 404, Subpt. P., App. 2.
 
 
 8
 At this stage of the analysis, the ALJ determined that claimant had the physical residual functional capacity for a wide range of unskilled sedentary work. 20 C.F.R. Sec. 404.1567(a). Following the direction of 20 C.F.R. Sec. 404.1520a, the ALJ considered Ziegler's functional limitations with respect to the medical reports concerning the severity of his mental impairments and determined that nonexertional mental limitations included the need to avoid highly stressful work and work above the unskilled level. 20 C.F.R. Sec. 404.1545(c). The ALJ concluded that claimant's capacity for a wide range of sedentary work had not been significantly compromised by his nonexertional mental limitations and it was, therefore, appropriate to apply the medical vocational guidelines, otherwise known as the "grids." Based on an exertional capacity for sedentary work and on claimant's age, education and work experience, 20 C.F.R. Sec. 404.1569 and Grid Rule 201.21, Pt. 404, Subpt. P., App. 2, directed a conclusion of "not disabled."
 
 A.
 
 9
 Claimant first argues that there is not substantial evidence to support the Secretary's conclusion that he had the mental capacity to perform a wide range of unskilled, sedentary work.
 
 
 10
 There is conflicting evidence about the severity of claimant's mental incapacity.
 
 
 11
 A vocational/psychological assessment was performed by F. Guerra, a vocational psychologist, on October 30, 1985. Claimant was found to have a full scale I.Q. of 91 on the Wechsler Adult Intelligence Scale. Performance subtest scores revealed an average ability in visual-motor coordination, borderline ability in understanding of social situations, and moderate deficiency in visual alertness, discrimination and visual motor speed. Performance on the Bender-Gestalt test was adequate and intact. The psychometric assessment and interview suggested an individual who was somewhat withdrawn and depressed with an underlying degree of anxiety.
 
 
 12
 A report made by a vocational counsellor connected with Professional Rehabilitation Associates, with whom claimant made contact between December 1985 and June 1986, stated: "The client can learn complex tasks, but at a somewhat slower speed than 'normal,' with occasional memory lapses. Psychologically, socially, and behaviorally, there appeared to be no problems." After two sessions during which numerous vocational fields were considered, it was recommended that claimant attempt two entry-level classes at a community college.
 
 
 13
 On April 9, 1986, claimant was evaluated by a psychologist, R. Cornette, Ph.D., and a psychiatrist, E. Pedraza, M.D., who administered a Wechsler Adult Intelligence Scale, a Bender-Gestalt test, Human Figure Drawings and Rorschach responses, and an MMPI and Zung Subjective Depression Scale. A full scale I.Q. test score of 96 was interpreted to represent a deterioration of 20 points from a pre-illness level, but there was no indication what test this score was being compared to. Bender-Gestalt and Figure Drawing results were interpreted to be indicative of (1) high levels of social withdrawal, constriction of affect and depression, and (2) diminished ability to concentrate, attend and deal with external stimuli, respectively. Other test scores indicated serious levels of depression and anxiety. Drs. Cornette and Pedraza concluded that claimant was suffering from major depression and was totally disabled from an emotional and psychological standpoint and unable to compete in the open labor market. A reevaluation on August 9, 1986, reached the same conclusion.
 
 
 14
 At the request of the Disability Determination Service, claimant was examined by L. McCulloch, a clinical psychologist, on October 7, and 9, 1986. Most of the tests which Drs. Cornette and Pedraza had given were administered. The I.Q. result of 97 was not considered to indicate a great degree of regression from a previously higher level of functioning. Neither the Bender-Gestalt test nor the Human Figures Drawing test indicated significant disorders. Rorschach responses did not reveal severe forms of impaired reality testing and the MMPI profile revealed a profile similar to individuals who present themselves ill but whose chronic complaints are not substantiated upon examination. McCulloch diagnosed a probable psychogenic pain disorder with associated moderate depression and noted only moderate limitations in claimant's overall functional capacity. Claimant's ability to relate to others and tolerate stress was not markedly impaired although chronic pain could interfere with ability to relate and tolerance for stress.
 
 
 15
 At the request of the Disability Determination Service, claimant was also examined by Dr. Kwon, M.D., a psychiatrist. Dr. Kwon found no gross thought disorder, psychoses, or organic brain dysfunction. Reality testing was fairly intact and affect was appropriate. He had a slightly decreased attention span, but there was no evidence of any significant disorder in perceptual-motor process. Although claimant complained of depression and nervousness, there was no evidence of acute depression or significant mood fluctuation. Dr. Kwon diagnosed a dysthymic disorder.[1] Dr. Kwon reported that claimant seemed depressed because he was not productive and would like to be rehabilitative. In his opinion, Ziegler maintained a fair to good functional ability to perform regular work activities.
 
 
 16
 The ALJ found that there was minimal testimony establishing a severe mental impairment. Claimant was evaluated five times with significant inconsistencies and contradictions between the reports of Guerra, McCulloch, and Kwon, on the one hand, and the reports of Cornette and Pedraza, on the other. The ALJ decided not to give much credibility to the conclusions and final analyses of the reports of Drs. Cornette and Pedraza as they were contradicted by the other reports and rebutted by the facts in this case. Their grim prognosis was not bourn out by claimant's behavior. No psychiatric nor psychological treatment was undertaken. After their diagnoses, claimant enrolled in two summer courses at a community college and passed both courses with a grade of B. He drove a distance of twelve miles per day to attend classes, attended classes four days a week and studied about five hours per day.
 
 
 17
 We find that there is substantial evidence to support the ALJ's determination that claimant's dysthymic disorder is compatible with all but highly stressful sedentary work. The reports of Guerra, McCulloch and Kwon consistently indicate that although claimant may be mildly depressed, he is not functionally impaired. This court has determined that a claimant must do more to establish a disabling mental impairment than merely show the presence of a dysthymic disorder. The claimant must establish that he is disabled by reason of the disorder. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir.1988). Moreover, it is the duty of the Secretary to resolve inconsistencies in the record. Beavers, 577 F.2d at 387. We find that the ALJ has taken into account the opinions of Drs. Cordette and Pedraza, which detract from the weight of the other reports, and given a logical explanation of why he accorded their opinions minimal evidentiary weight. For these reasons, we affirm the Secretary's determination that there is substantial evidence that claimant had the mental capacity to perform a wide range of sedentary work except for the need to avoid highly stressful activity.
 
 B.
 
 18
 Claimant next argues that the ALJ erroneously applied grid Rule 201.21 to direct a decision of nondisability. Claimant contends that the grid rulings account only for exertional impairments and are not fully applicable with nonexertional impairments, such as a mental impairment. After the appropriate exertional level is found (in claimant's case, sedentary work), a determination must be made as to how the nonexertional impairment further compromises the vocational base. Claimant contends that the Secretary failed to do this.
 
 
 19
 We find no error in the Secretary's application of Grid Rule 201.21. The Secretary concluded that claimant's nonexertional mental impairment was not severe and affected the vocational base only by including the need to avoid highly stressful work. This court has held that a mere allegation of a nonexertional limitation is not sufficient to preclude application of the grids. Cole v. Secretary of Health and Human Servs., 820 F.2d 768, 772 (6th Cir.1987). "The claim of nonexertional impairment must indicate a significant or severe limitation precluding the ability to do ... sedentary work." Id. As discussed previously, we find that there is substantial evidence to support the ALJ's finding that there was no significant nonexertional mental impairment, i.e., one that would prevent claimant from performing a wide range of sedentary work. Kirk, 667 F.2d at 529 (the grid only applies if claimant is capable of performing a wide range of jobs at the designated level). Therefore application of Grid Rule 201.21 was not erroneous and we affirm the decision of the district court on this issue.
 
 C.
 
 20
 Finally claimant questions the validity of a hypothetical question put to the vocational expert by the ALJ.
 
 
 21
 When the findings of fact as to each component of the Grid coincide with the Grid, the Grid directs a conclusion as to disability or non-disability and vocational testimony is not required. Gaffney v. Bowen, 825 F.2d 98, 102 (6th Cir.1987); Kirk, 667 F.2d at 528-30. In the present case, the ALJ correctly applied Grid Rule 201.21, directing a determination of non-disability. Therefore, vocational testimony was not required. Even if, as claimant contends, the vocational testimony was in response to a flawed hypothetical, claimant cannot prevail because vocational testimony was not necessary after application of Grid Rule 201.21. We therefore affirm the decision of the district court on this issue.
 
 
 22
 For the reasons stated above, the decision of the district court is affirmed.
 
 
 
 [1]
 A dysthymic disorder is a chronic disturbance of mood involving either depressed mood or loss of interest or pressure in all, or almost all, usual activities and pastimes, and associated symptoms, but not of sufficient severity and duration to meet the criteria for a major depressive episode full affective syndrome. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 220-21 (3d ed.1980)