Terry W. BURESS, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 86–6070.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 8, 1987.

Decided Dec. 15, 1987.

Sandra L. Mayes, Appalachian Research and Defense Fund of Ky., Barbourville, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., John S. Osborn, III, Lexington, Ky., for defendant-appellee.

Before GUY and WELLFORD, Circuit Judges; and HARVEY, Senior District Judge*.

PER CURIAM.

Terry W. Buress appeals from the decision of the district court affirming the Secretary's denial of disability insurance benefits and supplemental security income benefits. For the reasons that follow, we affirm.

Buress filed an application for disability insurance benefits on June 1, 1982, and for supplemental security income on September 15, 1982. He alleged a disability onset date of November 1981, due to a heart condition and mental impairments. Both applications were denied by the Administrative Law Judge (ALJ) on August 17, 1983. The ALJ concluded that because of his cardiac impairment, Buress was unable to perform his prior work activity as a fork lift operator and truck driver and could perform no more than light work. Based upon this conclusion and Buress's age (37), education (12th grade) and prior work activity (heavy-unskilled), the ALJ found Buress not disabled under Rule 202.20 of 20 C.F.R. Pt. 404, Subpart P., App. 2. The ALJ also determined that Buress had a nonexertional impairment due to an adjustment disorder with mixed emotional features, but that this impairment did not cause any significant restriction on his residual functional capacity to perform the full range of light work. The Appeals Council denied review on December 14, 1983. On August 13, 1986, the district court affirmed the Secretary's denial of benefits.

In reviewing the Secretary's decision, we are limited to determining whether substantial evidence exists in the record as a whole to support the decision. 42 U.S.C. § 405(g). The reviewing court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

Buress first contends that he is entitled to a finding of disability because his addiction to drugs meets or equals a listed impairment in Appendix 1. When a claimant can show an impairment is listed in Appendix 1 ("the listings"), or is equal to a listed impairment, the ALJ must find the claimant disabled without consideration of the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d) (1986). See *Gambill v. Bowen*, 823 F.2d 1009, 1011 (6th Cir.1987).

The listing of impairments for mental disorders is contained in section 12.00 of Appendix 1. The provision relating to substance addiction disorders in section 12.09. Section 12.09 references nine other mental disorder listings in section 12.00 which must be used to evaluate the behaviorial or physical changes resulting from regular

use of addictive substances. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.00(A). "Thus, section 12.09 requires not only that the claimant be a substance abuser, but also that he satisfy the requirements of the listing for one of the nine other mental or physical disorders referred to in § 12.09." *LeMaster v. Secretary of Health & Human Services*, 802 F.2d 839, 841 (6th Cir. 1986).

Buress testified at the hearing that he had not drunk any alcoholic beverages for over two years. He also indicated that he was no longer addicted to drugs. Nevertheless, it is clear from the notes from the Comprehensive Care Center and a letter from radiologist Dr. Thomas Jones dated April 27, 1983, indicating that Buress was receiving treatment for chemical addiction, that Buress still suffers from chemical addiction. We must therefore determine whether Buress suffers from any of the nine impairments listed in section 12.09.

The latter five listings referenced in section 12.09 are clearly inapplicable. The first four, organic mental disorders under section 12.02, depressive syndrome under section 12.04, anxiety disorders under section 12.06, and personality disorders under section 12.08 are arguably applicable.

In order to determine whether a claimant is disabled under either of these four sections, two separate types of criteria must be met. First, paragraph A of each section contains a description of certain clinical findings which must be present. These clinical findings, of course, are different for each section. Second, paragraph B of each section contains a list of functional limitations which must also be satisfied.[1] "The purpose of including the criteria in paragraph B ... of the listings for mental disorders is to describe those functional limitations associated with mental disorders which are incompatible with the ability to work." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.00(A).

Unlike the clinical findings under paragraph A of each section, the elements in paragraph B of each section are identical. Two of the following restrictions must be present:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Because we conclude that there is substantial evidence in support of the conclusion that Buress is not functionally limited as described under paragraph B of any of the four sections, we need not explore whether the clinical findings presented in paragraph A of each section are present.

The first restriction which might be met is a marked restriction of activities of daily living. Activities of daily living include: "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using telephones and directories, using a post office, etc." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.00(C)(1). Buress testified that he lives with his mother and does no shopping or household chores. He also testified, however, that he bathes and dresses himself, attends Alcoholic Anonymous meetings, occasionally visits with friends and relatives and utilizes the public transportation system. On June 15, 1982, Buress was examined by Dr. Phillip S. Backus, a child psychiatrist at the Comprehensive Care Center. He described Buress as a "nice-looking, neatly dressed" young

---

1. Section 12.06 permits a finding of disability when the requirements of both section 12.06(A) and 12.06(B) are met, or alternatively, when the requirements in both 12.06(A) and 12.06(C) are met. Subsection C, which requires that the claimant be completely unable to function independently outside the area of one's home, is inapplicable in this case.

male. Buress was also examined by psychologist Dr. I.T. Baldwin on May 10, 1983. Buress indicated to Dr. Baldwin that he swings on the porch and walks up and down the road. Dr. Baldwin noted that Buress appeared neat and well groomed and appropriately dressed. He concluded that Buress's activities are not limited because Buress continues to visit his former home in Atlanta and moves about freely in the community. Finally, Buress was examined by Dr. Elmer C. Maggard, a staff psychologist at the Comprehensive Care Center, on November 21, 1982. He stated in his report that Buress is capable of managing his own financial affairs. Thus, there is substantial evidence to conclude that Buress's daily activities are not markedly restricted.

The second functional restriction consists of marked difficulties in maintaining social functioning. Social functioning "refers to an individual's capacity to interact appropriately and communicate effectively with other individuals," and "includes the ability to get along with others, e.g., family members, friends, neighbors, grocery clerks, landlords, bus drivers, etc." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.00(C)(2). Buress was examined by Dr. Jack Eardly, a psychiatrist, on July 30, 1982. Buress indicated to Dr. Eardly that he gets along with family members, neighbors, friends, store clerks, church members and doctors. Dr. Eardly also reported that Buress smiled and talked with others at the testing site. Although Buress alleges he once hit a man with a hammer and pointed a gun at his wife, these incidents took place during his marital breakup. Accordingly, there is substantial evidence in support of the conclusion that Buress does not have marked difficulty in maintaining social functioning.

The third possible restriction is a deficiency of concentration, persistence or pace which results in frequent failure to complete tasks in a timely manner. Dr. Eardly indicated in his report that Buress understood and was able to carry out simple instructions. Other than the fact that his attention often wanders while he is watching television, Buress has presented nothing to demonstrate that he is incapable of concentrating or persisting at a given task.

Because Buress must demonstrate at least two of the four restrictions under paragraph B of each section and because he has failed to prove any of the first three, we conclude that he is not functionally limited and thus not disabled under section 12.09. Buress's drug-related problems simply do not cause serious interference with his normal day-to-day activities. *See LeMaster,* 802 F.2d at 842; *Gerst v. Secretary of Health & Human Services,* 709 F.2d 1075, 1078 (6th Cir.1983). Although Dr. Maggard and Dr. Backus concluded that Buress suffers from several mental disorders, nothing in their reports supports the conclusion that the disorders give rise to the necessary level of limitations upon those functional areas deemed essential to work under section 12.00 of 20 C.F.R. Pt. 404, Subpart P, App. 1.[2]

Buress also contends that the ALJ erred in determining that his mental impairments do not significantly affect his ability to work. He requests the case be remanded for testimony by a vocational expert in order to determine the availability of jobs given his nonexertional impairments.

Once the ALJ determined that Buress did not have the residual functional capacity to perform his past relevant work, the burden shifted to the Secretary to show that Buress possesses the capacity to perform other substantial gainful activity that exists in the national economy. *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987). The Secretary may meet this burden by reference to the medical vocational guidelines (the "grids") unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations. *Cole v. Secretary of Health & Human Services,* 820 F.2d 768, 771 (6th Cir.1987). As we noted in *Cole,*

A nonguideline determination is required only if "the nonexertional limitation re-

---

2. Dr. Maggard's conclusion that Buress is occupationally disabled is not binding. *See,* e.g.,

*King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984); *Varley,* 820 F.2d at 779 n. 2.

stricts a claimant's performance of a full range of work at the appropriate residual functional capacity level...." A mere allegation of nonexertional limitation is not sufficient to preclude application of the grid; the determining factor is whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of sedentary work.

*Id.* at 772 (citations omitted).

We previously considered the severity of Buress's nonexertional limitations in the context of functional limitations as defined under section 12.00 of 20 C.F.R. Pt. 404, Subpart P, App. 1. For the reasons set forth above, the ALJ's finding that Buress's nonexertional impairments are not severe enough to alter the conclusion that Buress could do a full range of sedentary work is supported by substantial evidence. The judgment of the district court is AFFIRMED.