865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clifford T. LOGAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5500.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1989.
 
 Before KEITH and KRUPANSKY, Circuit Judges, and LAWRENCE P. ZATKOFF*.
 PER CURIAM:
 
 
 1
 Plaintiff, Clifford T. Logan ("Logan"), appeals from the judgment of the district court affirming the decision of defendant, Secretary of Health and Human Services ("Secretary"), denying his applications for disability insurance and supplemental security income benefits. Upon review, we AFFIRM.
 
 I.
 
 2
 Logan was thirty-three when he applied for benefits on March 16, 1984. His previous employment included work as a carloader and steelbinder for a steel mill and as a laborer for a feed store. In his applications, Logan alleged that he had become disabled as of July 7, 1981 as the result of alcoholism, jaw pain, a nervous condition, headaches, and the pressure of a steel pin in his leg.
 
 
 3
 The medical evidence in this case was analyzed by the administrative law judge who heard his appeal from the administrative denial of his claim as follows:
 
 
 4
 In considering the medical evidence, records from the Southern Hills Hospital in Portsmouth, Ohio, are documentative of the claimant having required detoxification treatment there in February 1981. An electroencephalogram and head CT scan done at that time were both within normal limits so that evidence of brain damage was ruled out. Neurologic examination was also normal. Psychiatric examination had revealed thought processes to be within acceptable limits with no evidence of delusions or hallucinations. At the time of discharge on March 15, 1981, his hospital stay was characterized as having been uneventful with the claimant being motivated to work hard in a program and in therapy. His initial depression was said to have cleared early. He was considered to be able to return to work at the time of discharge (Exhibit 20).
 
 
 5
 He was seen as an outpatient at King's Daughters Hospital in Ashland, Kentucky on March 16, 1984 and again on March 21, 1984, because of complaints of pain in his jaw. A skull x-ray was normal. A CT head scan revealed very small calcification in the right cerebellum, but no evidence of displacement, mass effect, or other abnormal density (Exhibits 21 and 22).
 
 
 6
 Pursuant to a diagnosis of osteomyelitis with infection of the right mandibular ridge area in his jaw, the claimant underwent surgery at the University of Kentucky Medical Center on October 24, 1984. Exploratory surgery was followed by enucleation of chronic granulation tissue and biopsy. He was said to have had a totally routine recovery. Post-operative x-rays were indicated to reveal the surgical site to be within normal limits, status post mandibular debridement and exploration procedures (Exhibit 29).
 
 
 7
 In a report received on May 29, 1985, Dr. Bob Crider indicates that he had referred the claimant to the University of Kentucky for evaluation and treatment. He noted the claimant to have had two prior operations on his right mandible under a diagnosis of recurrent osteomyelitis. It was not indicated that the claimant had required other than supportive treatment after his third such surgery (Exhibit 37).
 
 
 8
 Another treating physician who had followed the claimant for his chronic symptomatic osteomyelitis is Dr. HenryJones. He reports on November 18, 1986 that he considered the claimant to be completely disabled from doing any type of work due to the severe chronic pain syndrome in association with anxiety and depression (Exhibit 60).
 
 
 9
 Dr. Robert Marciani, the claimant's attending oral surgeon, however, reports that examination on February 5, 1986 was not significant for any gross clinical intra-oral or extra-oral findings following his surgery. A follow-up x-ray could not be definitively interpreted as to whether the disease process was still active. Complaints of intermittent intense right jaw pain were indicated by Dr. Marciani to make him suspicious of a continued low-grade process, but without there being clinical or definite laboratory evidence that such is the case (Exhibit 59).
 
 
 10
 The fact that the claimant has no neurological disability by reason of his headache and jaw pain complaints is reported by Dr. Bal Bansal, a treating physician and neurologist, in separate medical reports dated April 8, 1984 and January 27, 1986. It was stated that remarkable improvement had been achieved in the claimant's headache symptoms upon the prescription of steroid and Lithium Carbonate mediation therapy. At the time of his most recent report, the use of medication no stronger than Tylenol III was said to relieve his pain, characterized as a lower half syndrome involving a cluster migraine-type headache (Exhibits 24 and 50).
 
 
 11
 In a statement received on May 14, 1986 and in a deposition submitted on December 23, 1986, Dr. Dick Larumbe, a psychiatrist, reports having had the claimant under his care since 1980. Previous diagnoses were said to have involved alcohol abuse and a dysthymic disorder. Care of the claimant was indicated to have been sporadic with the claimant coming off and on to his office in 1980 and 1981, following which he had not been seen until March 11, 1986. He was then seen upon a regular basis one time per month through December 3, 1986. In his medical statement, Dr. Larumbe does not indicate the claimant to be in any way impaired in orientation, attention, or concentration. Judgment and insight were said to be good. There was no evidence of his being suicidal or homicidal. At most he was said to be temporarily disabled with a guarded prognosis because of the chronicity of his alcoholism and depresion. Statements by Dr. Larumbe in his deposition are in contradiction to his earlier statements, wherein he concludes in the affirmative that the claimant's symptoms of depression and anxiety do have the effect of causing a marked restriction in his activities of daily living and marked difficulties in his maintenance of social functioning as well as caussing deficiencies in concentration that would result in a frequent failure to complete tasks in a work setting (Exhibits 51 and 63).
 
 
 12
 On May 5, 1984, the claimant underwent consultative internal medicine evaluation for purposes of Social Security disability determination by Dr. Graham Scott. Physical examination at that time was normal with there being no radiographic evidence of any bony obstruction. He noted the claimant to be status post pin insertion in his leg in 1968. No joint deformities or decreases in range of motion were detected. This was true with respect to the claimant's spine, upper and lower extremities, and jaw. X-rays involving six views of the claimant's mandible and temporal mandibular joint were specifically stated to have shown no evidence of bony destruction of abscess formation. Complaints of an anxiety disorder and alcoholism were based on statements made by the claimant. The claimant was not reported to have been intoxicated at the time of examination while treatment was indicated to have been limited to the prescription of Lithium Carbonate and Prednisone medications (Exhibit 26).
 
 
 13
 Psychological testing of the claimant is reported by Thomas Heiskell, Ph.D., to have been conducted on May 10, 1984. Intelligence testing utilizing the WAIS-R scoring scale resulted in a full-scale IQ score of 81, a verbal IQ score of 83, and a performance IQ score of 82 that were interpreted as falling within a dull-normal range of intellectual functioning. His memory was considered to be remarkably unimpaired inlight of his history of drinking. He was said to remain capable of understanding and following instructions and performing routine, repetitive tasks. He was said to retain a good ability to relate to others when not drinking. His ability to tolerate the pressures of everyday work was considered to be sufficient to allow him to retain employment over a period of time (Exhibit 27).
 
 
 14
 Psychiatric evaluation of Dr. Sulpicia Marca is reported on May 15, 1984 to have resulted in a diagnosis only of alcohol abuse. No thought disorder could be elicited. Responses were characterized as spontaneous and mood and affect appropriate. The claimant was said to be well-oriented. Both short-term and long-term memory were stated to be intact while concentration was rated as fair. There wass no evidence of visual or auditory hallucinations. It was again noted that he had good interpersonal relationships with other people (Exhibit 28).
 
 
 15
 A second hearing in this case was held on November 20, 1986, in Huntington, West Virginia. The claimant was present and represented by George Howell, attorney. In discussing his various disorders, the claimant expressly denied having consumed any alcohol for more than six months. Prior to that time, it was stated that he would consume up to one ot two cases of beer per day. Past treatment for this disorder was affirmed to have been through Dr. Larumbe and on various occasions at King's Daughters Hospital. He noted that he was able to stop drinking, despite having ceased attending the Alcoholics Clinic at this hospital in 1985 because of a lack of insurance coverage. Other complaints on the part of the claimant were said to be due to pain in his knee and in his jaw. It was nevertheless stated that he could walk up to a mile before experiencing knee pain. With respect to his jaw disorder, he did not report having been under any special medical treatment since his surgery in October 1984. He did note that he is subject to limitations upon chewing that preclude eating such foods as hard candy, steak, or chops. He is able to consume a wide range of soft foods, however.
 
 
 16
 It was not indicated that he is under any other limitations due to this disorder, aside from a sensitivity to touch.
 
 
 17
 The claimant went on to testify that he has been divorced twice, which he attributed to his past drinking problem. He also has no motor vehicle operator's license because of a drunk driving conviction. He lives alone in a trailer on his parents' property, where he remains capable of independently performing necessary self-care activities such as bathing and dressing. He cleans his trailer without assistance. His mother does his laundry and prepares his meals. He shops with the assistance of his parents who will furnish him transportation. He continues to attend church on an occasional basis. He remains socially active, although friends visit him. Within three weeks prior to the hearing, he had gone fishing. He enjoys going to the local YMCA to watch boxing matches. He is interested in music and said that he is trying to learn to play the guitar.
 
 
 18
 His past employment was described as having involved jobs at a steel company, placing steel bands around boxes; as a laborer, digging and using jackhammers and sledgehammers and as a truck driver. He had performed this latter position for two separate employers, one of which had entailed loading duties delivering feed, while the other job was said to have involved steel hauling. It was denied by the claimant that he had worked since the date of disability onset. Present income was reported to be limited to the receipt of food stamps.
 
 II.
 
 19
 The ALJ and the Secretary concluded that Logan was not disabled in that he could perform his past relevant work. The district court found that substantial evidence supported the decision of the Secretary. We agree.
 
 A.
 
 20
 "In reviewing the Secretary's decision, we are limited to determining whether substantial evidence exists in the record as a whole to support the decision." Buress v. Secretary of Health and Human Services, 835 F.2d 139, 140 (6th Cir.1987). Thus, we are not empowered to conduct a de novo review, or resolve conflicts in evidence or make credibility determinations. Id. "Substantial evidence means more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Shavers v. Secretary of Health and Human Services, 839 F.2d 232, 234 (6th Cir.1987). Once it is determined that substantial evidence to support a finding of the Secretary exists, that finding is conclusive. 42 U.S.C. Sec. 405(g); Buress, 835 F.2d at 140.
 
 B.
 
 21
 First, Logan argues that he must be found to be disabled because his addition to alcohol meets or equals a listing of impairments for mental disorders. The listing for these disorders is found at 20 C.F.R. Pt. 404, Subpart P., App. 1. specifically, the section dealing with substance addiction disorders is Section 12.09:
 
 
 22
 12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
 
 
 23
 The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
 
 
 24
 A. Organic mental disorders. EValuate under 12.02.
 
 
 25
 B. Depressive syndrome. Evaluate under 12.04.
 
 
 26
 C. Anxiety disorders. Evaluate under 12.06.
 
 
 27
 D. Personality disorders. Evaluate under 12.08.
 
 
 28
 E. Peripheral neuropathies. Evaluate under 11.14.
 
 
 29
 F. Liver damage. Evaluate under 5.05.
 
 
 30
 G. Gastritis. Evaluate under 5.04.
 
 
 31
 H. Pancreatitis. Evaluate under 5.08.
 
 
 32
 I. Seizures. Evaluate under 11.02 or 11.03.
 
 
 33
 To evaluate whether the required level of severity exists in situations such as Logan's it is appropriate to use the criteria found in sections 12.09(A)-(D). Buress v. Secretary of Health and Human Services, 835 F.2d 141. In Buress, this Court described the procedure for determining disability under these four sections:
 
 
 34
 First, paragraph A of each section contains a description of certain clinical findings which must be present. These clinical findings, of course, are different for each section. Second, paragraph B of each section contains a list of functional limitations which must also be satisfied.[1] "The purpose of including the criteria in paragraph B ... of the listings for mental disorders is to describe those functional limitations associated with mental disorders which are incompatible with the ability to work." 20 C.F.R. Pt. 404, Subpart P, App. 1, Sec. 12.00(A).
 
 
 35
 Unlike the clinical findings under paragraph A of each section, the elements in paragraph B of each section are identical. Two of the following restrictions must be present:
 
 
 36
 1. Marked restriction of activities of daily living; or
 
 
 37
 2. Marked difficulties in maintaining social functioning; or
 
 
 38
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 39
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 40
 We find that there is substantial evidence to support the conclusion that Logan is not functionally limited as required by paragraph B of any of the above sections. As the district court noted, Logan is able to carry out the day-to-day activities of his life. Moreover, medical observation of Logan consistently reveals that he has good personal skills and relationships. Thirdly, except for some statements made by Dr. Larumbe prior to his deposition, Logan has demonstrated his ability to perform routine tasks. Therefore, because substantial evidence exists to support a finding that three of the four restrictions found in paragraph B are not present, we must find that Logan is not disabled under section 12.09. Buress, 835 F.2d at 142.
 
 
 41
 Logan also argues that the ALJ erred when he chose to "ignore the direct, uncontradicted medical evidence [from Dr. Larumbe] to the effect that Mr. Logan is totally disabled." Appellant's Brief at 6. This argument is based upon Dr. Larumbe's status as Logan's treating physician. However, the medical opinions and diagnoses of treating physicians are not binding on the finder of fact if they are "contradicted by substantial evidence to the contrary." Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987). Our review of the record convinces us that substantial evidence does exist to rebut the conclusions of Dr. Larumbe. As the ALJ concluded, "the substantial weight of the evidence is reflective of only slight mental limitations and little or no physical limitations.
 
 
 42
 Logan also asserts that the Secretary erred in failing to have a vocational expert to testify at Logan's hearing. However, such testimony would be necessary only if Logan could not perform his past relevant work; because substantial evidence exists that Logan can perform his past relevant work, such testimony became superflous.
 
 III.
 Accordingly, the judgment is AFFIRMED.[2]
 
 
 *
 Honorable Lawrence P. Zatkoff, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 In Buress, the court noted that "Section 12.06 permits a finding of disability when the requirements of both section 12.06(A) and 12.06(B) are met, or alternately, when the requirements in both 12.06(A) and 12.06(C) are met. Subsection C, which requires that the claimant be completely unable to function independently outside the area of one's home, [was] incapable in [Buress ]." 835. F.2d at 141. Likewise, subsection C is inapplicable here
 
 
 [2]
 We also reject Logan's argument that any combination of impairments support a finding of disability in this case