869 F.2d 1488
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hatler BURKE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5651.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1989.
 
 Before KEITH, NATHANIEL R. JONES, and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from the district court's affirmance of the Secretary's denial of social security benefits to claimant, Hatler Burke. Upon review, we find that there was not substantial evidence for the Secretary's decision that claimant can do medium level work, and we reverse and remand for an award of benefits.
 
 I.
 
 2
 Claimant was born on December 9, 1932. He has a second grade education, and it has been determined that he is illiterate. His past relevant work experience is as a coal miner. Claimant filed for benefits on March 14, 1984, alleging disability due to numerous problems such as stomach trouble, respiratory disorders, and chest pain.
 
 
 3
 Subsequent to a hearing, an administrative law judge (ALJ) initially denied benefits on April 9, 1985, and the Appeals Council denied review. The district court remanded the case for a consideration of the vocational effect of claimant's non-exertional impairments. The ALJ held a supplemental hearing in October 1986 and subsequently denied benefits. The Appeals Council modified the ALJ's recommendation but, nevertheless, denied benefits. The district court affirmed, and granted the Secretary's summary judgment motion. Claimant appeals.
 
 
 4
 There are numerous medical reports in this case which we will briefly summarize. Claimant's most serious problem appears to be his respiratory condition. He has been diagnosed consistently as having chronic obstructive lung disease, caused by chronic bronchitis, emphysema, and pneumoconiosis, stage I. He has been examined by both his own physicians and by government paid physicians, and has also received chest x-rays, blood gas studies, and pulmonary function tests. On the basis of the pulmonary function studies, several physicians have concluded that claimant has "moderately severe obstructive lung disease." (App. 143, 163, 165, 168, 227). The claimant had only a mild response to bronchodilators, and takes medications at home for his disease. However, the numerical values of his pulmonary function and blood gas studies did not meet the values listed at 20 C.F.R. Part 404, Subpart P, App. 1, section 302. If an individual is suffering from an impairment which meets or equals the listed impairments in Appendix 1, a finding of disabled will be made without consideration of vocational factors. 20 C.F.R. Sec. 404.1520(d) and Sec. 416.920(d). Although claimant could not be termed disabled based solely on the listed impairments, the ALJ concluded that the medical evidence did establish that claimant has a severe pulmonary disease.[1]
 
 
 5
 At the supplemental hearing before the ALJ, claimant testified that he suffered from breathing problems, including shortness of breath and a choking feeling that occurs at night. He stated that he cannot walk uphill because of shortness of breath, can walk at most one-fourth of a mile, and cannot expose himself to dust or fumes. He also complained of chest pains and other pains in his joints.
 
 
 6
 Claimant has had his chest pain evaluated by several physicians. A cardiology consultation by Dr. Jacobs in May 1984 diagnosed his chest pain as due to costochondritis. Claimant's EKG was normal. A treadmill exercise test was attempted, but had to be stopped after three minutes due to shortness of breath. Claimant also developed chest pain, but no ischemic EKG changes were noted.
 
 
 7
 Claimant also complained of epigastic distress and weight loss. He was diagnosed as having a hiatal hernia, but gastroenterology evaluations for his weight loss of over thirty pounds did not produce an etiology.
 
 
 8
 Lastly, claimant states he also has a mental impairment. In July 1986, the claimant was examined by Eric Johnson, a consulting psychologist, who diagnosed adjustment disorder and borderline intellectual ability. Tests revealed that claimant's IQ is 72, and that he is functionally illiterate. He noted that claimant has "only a fair ability to deal with work stresses" and "only a fair ability to function independently." (App. 192).
 
 
 9
 A vocational expert testified at the supplemental hearing. The vocational expert explained that claimant's past work experience as a coal mine laborer was classified as semi-skilled, very heavy work. He also testified that claimant could no longer perform his past work, considering his non-exertional and exertional impairments. The testimony was as follows:
 
 
 10
 Q. [BY ALJ] Considering the claimant's age of 53 years and his illiteracy and his work experience and assume that he has exertional impairments which limit him to medium level work, assume that he also has non-exertional impairments, to wit: illiteracy, borderline IQ, only a fair ability to deal with work stresses, only a fair ability to function independently, and there is prohibition against working in temperature extremes in chemicals and dust and fumes and humidity, now on all these assumptions, in your opinion, can the claimant perform his past work?
 
 
 11
 A. No, Your Honor.
 
 
 12
 Q. On all of these assumptions, in your opinion, how many or what percentage of the 800 medium and 1400 light and 200 sedentary unskilled jobs in existence which is noted by the secretary under the grid rules can the claimant be expected to perform?
 
 
 13
 A. Your Honor, on the basis of the limitations posed in the hypothetical, I think it would be necessary to rule out 40 percent of the medium jobs, 20 percent of the light jobs and something less than 10 percent of the sedentary jobs recognized by the secretary and I notice particularly the limitations the atmospheric limitations, the prohibition against dust or fume or vapor atmospheres.
 
 
 14
 Q. Alright. Now, assume the creditability [sic] as according to the claimant's testimony and that the testimony supported by the medical evidence, now on the assumption, in your opinion, are there any jobs that the claimant can perform?
 
 
 15
 A. None that I can think of and certainly not, not on a competitive basis.
 
 
 16
 (App. 217-218).
 
 II.
 
 17
 Claimant's sole issue on appeal is that the Secretary's decision that claimant can do medium level work is not supported by substantial evidence. According to the Secretary's medical-vocational guidelines (the grid), claimant is disabled from doing light and sedentary work because of his age, illiteracy, and prior unskilled work experience. 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.09, 202.09. Therefore, in order to find claimant not disabled and consequently not entitled to benefits, the Secretary needed to find that claimant could do medium-level work. Id. at Rule 203.18.
 
 
 18
 Evaluating a claimant's entitlement to benefits under the social security regulations is a sequential process. Once a claimant establishes that he cannot perform his past relevant work, thereby presenting a prima facie case of disability, the burden shifts to the Secretary to establish that the claimant retains the residual functional capacity to perform "substantial gainful work which exists in the national economy." Cole v. Secretary of Health & Human Services, 820 F.2d 768, 771 (6th Cir.1987), quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986). Substantial evidence must support the ALJ's finding that the claimant has the vocational qualifications to perform specific jobs. Richardson v. Secretary of Health & Human Services, 735 F.2d 962, 964 (6th Cir.1984); see also Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1987). Our review on this issue requires us to ascertain that the Secretary's decision is based on substantial evidence, and not to undertake a de novo review of all the evidence. 42 U.S.C. Sec. 405(g); see also Buress v. Secretary of Health & Human Services, 835 F.2d 139, 140 (6th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971).
 
 
 19
 In the case before us, the Secretary found that claimant's pulmonary disease was a severe medical impairment, and claimant was therefore unable to do his past work as a coal miner. The Secretary considered claimant's age, education, past work experience, and residual functional capacity, and reached the conclusion that claimant could do medium-level work. See 20 C.F.R. Sec. 404.1520(f) and Sec. 416.920(f). Medium-level work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. Sec. 404.1567(c). Residual functional capacity (RFC) is what a claimant can do in a work setting despite his exertional and non-exertional limitations. 20 C.F.R. Sec. 404.1545(a). Physical abilities, mental impairments, and other impairments are considered in assessing a claimant's capacity for work functions. Id.
 
 
 20
 In this case, the claimant has exertional impairments due to his pulmonary disease, and non-exertional impairments due to his need to avoid chemicals, dust, fumes, humidity, and temperature extremes. He also has non-exertional impairments of illiteracy, borderline IQ, and only a fair ability to both deal with work stresses and function independently.
 
 
 21
 Claimant asserts that his exertional impairments due to his pulmonary disease prevent him from doing medium-level work. Although the record contains many medical evaluations of claimant, the information relating to claimant's physical ability to do work is minimal. There is a "residual function capacity assessment" form filled out, albeit incompletely, by Dr. Rawlings. (App. 74). The form, dated July 18, 1984, indicates that claimant has COPD, should avoid dust and fumes, and can "do light to medium work." Dr. Rawlings did not examine claimant; he filled out the form at the request of the Secretary, using the information in the Secretary's file. Dr. Rawlings' areas of speciality are in surgery and obstetrics and gynecology. (App. 79). The form does not indicate on what basis he determined that claimant could frequently lift and carry twenty-five pounds.
 
 
 22
 The only other report which refers to claimant's physical abilities is a consultative exam by Dr. Branco, requested by the Kentucky Division of Disability Determinations. In June and August of 1986, Dr. Branco examined claimant, performed several tests including a pulmonary function test, and filled out a physical assessment of claimant's ability to do work-related activities. He noted that he was "unable to assess" claimant's ability to lift and carry objects because of claimant's "moderate to severe" pulmonary disease. (App. 231). However, he indicated that claimant may never climb, and may only occasionally balance, stoop, crouch, kneel, or crawl. Occasionally is defined as from very little up to one-third of an eight-hour day. Additionally, Dr. Branco notes that claimant's ability to push/pull is affected by his disease, and there are also numerous environmental restrictions. Dr. Branco's medical specialties are in the areas of internal medicine and cardiology.
 
 
 23
 These two reports are the extent of evaluations of claimant's physical abilities. Dr. Rawlings' report is entitled to little, if any, weight, since he did not examine the patient and his report contains no factual basis for his conclusions. This report cannot constitute substantial evidence for the denial of benefits. Sherrill v. Secretary of Health & Human Services, 757 F.2d 803, 805 (6th Cir.1985); see also McCoy v. Schweiker, 683 F.2d 1138, 1147 n. 8 (8th Cir.1982). Dr. Branco's report, in contrast, tends to substantiate claimant's assertion that he cannot do medium-level work, and is based on an examination and laboratory reports.
 
 
 24
 The ALJ, in his recommendation, stated that pulmonary function studies and blood gases revealed values indicative of ability to do medium work. However, although blood gases were near normal, on all the pulmonary function tests claimant is diagnosed as having values consistent with moderate to severe disease.
 
 
 25
 Once claimant established he could no longer do his past work, the burden shifted to the Secretary to demonstrate that claimant could do substantial gainful work. We conclude that there is no substantial evidence in the record that claimant has the physical abilities to do medium-level work.[2] The claimant could not do light or sedentary work, because he is deemed disabled from those levels due to his age, education, and past work experience.
 
 
 26
 Since the Secretary has not discharged his burden of proving that claimant has the RFC for substantial gainful employment, we hereby vacate the district court's affirmance of the denial of benefits. This matter is therefore REMANDED with directions to award benefits.
 
 
 
 [1]
 Claimant's most recent pulmonary function study is as follows:
 Claimant's values Listed impairment values
FVC 3.872
FEV1 1.513 1.4
FEV1/FVC 39%
MVV 58.4 56.
IVC 3.738 1.6
 (App. 227).
 
 
 [2]
 The ALJ's hypothetical to the vocational expert assumed that claimant could do medium-level work, and therefore is of no help on the issue of wherher claimant can do medium work. The vocational expert testified that claimant could do 60% of medium-level work, and we are of the opinion that, if claimant's exertional impairment, such as those noted in Dr. Branco's report, were included in the hypothetical, the range of medium work that claimant could do would be significantly compromised, indicating a finding of "disabled."