875 F.2d 862
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gloria COOLEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1465.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and JOHN D. HOLSCHUH, District Judge*.
 PER CURIAM.
 
 
 1
 The Secretary of Health and Human Services ("Secretary") found that claimant Gloria Cooley ("Cooley") became disabled on May 23, 1984. Cooley appeals the Secretary's determination of her onset date, arguing she is entitled to an earlier date. For the reasons that follow, we affirm the finding of disability, but reverse the district court's determination of Cooley's onset date.
 
 I.
 
 2
 Cooley applied for disability insurance benefits on March 25, 1982. Her application was denied initially and upon reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 10, 1984. On November 15, 1984, the ALJ issued an opinion finding Cooley not disabled. This became the final decision of the Secretary. Cooley then filed for judicial review in the district court.
 
 
 3
 On November 6, 1985, the district court remanded the case to the Secretary for a new evaluation under the revised mental impairment standards of the Social Security Disability Benefits Reform Act of 1984 (Pub.L. No. 98-460). The ALJ conducted two more hearings, on May 19 and July 22, 1986. On January 8, 1987, the ALJ found Cooley disabled by an anxiety-related disorder pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.06, with an onset date of May 23, 1984. He characterized Cooley as suffering from post-traumatic stress disorder, aggravated by personality and anxiety problems. He found that she was never capable of returning to her past relevant work after she was injured in April 1981, but she could do unskilled work between April 1981 and May 23, 1984. The Appeals Council adopted the ALJ's recommendations.
 
 
 4
 Cooley continued to object to the 1984 onset date and reinstated her action for judicial review. Both Cooley and the Secretary moved for summary judgment. The matter was referred to the magistrate, who recommended granting Cooley's motion for summary judgment. The magistrate believed the medical evidence established that Cooley's ability to concentrate became substantially impaired in April 1981. Therefore, the hypothetical question relied upon by the ALJ which assumed she could concentrate did not accurately portray her impairment, and the vocational expert's response to the deficient question was not evidence that Cooley could perform unskilled work between April 1981 and May 1984.
 
 
 5
 The district court rejected the magistrate's recommendation and affirmed the Secretary's decision that Cooley became disabled on May 23, 1984. The district court did not address the magistrate's concerns with the ALJ's hypothetical question. Cooley then filed a timely appeal with this court.
 
 
 6
 Cooley was born April 5, 1946, and was thirty-five years old when she was injured on April 6, 1981, while working as a health instructor at M.L. King High School in Detroit. According to the injury report she filed with the Board of Education, Cooley was monitoring a hallway when she heard a commotion in a girls' restroom. She went into the restroom, found several boys and girls, and turned to find another teacher to help her with the situation. The students rushed to leave, and Cooley's head and body were squeezed and smashed several times as she became trapped between a brick wall and a door that was repeatedly thrown open by fleeing students. Cooley reported suffering bruises on her face and body. Later, in August 1981, when she underwent the first of numerous physical and neurological examinations, she reported that she lost consciousness during the restroom incident. Cooley's mental and emotional condition deteriorated significantly between April 1981 and May 1984.
 
 
 7
 Cooley testified that since the restroom incident she has been unable to think clearly, and has become forgetful to the point where she lives according to routines and lists. She experiences speech, reading and vision difficulties; becomes fatigued and overwhelmed frequently and easily; and has remained severely depressed, withdrawn and is frightened by other people and her inability to think and speak clearly and coherently. Cooley's complaints and symptoms are documented in an extensive medical history.
 
 
 8
 Between June 1981 and May 1983, Cooley was examined by several neurologists, ophthalmologists, psychiatrists and psychologists, dentists, an ear, nose and throat physician, and a speech therapist. She was hospitalized from May 23, 1984, through June 20, 1984, because of the increasing severity of her impairments and her withdrawal from normal life activities. At admission, she was anxious, easily overwhelmed, depressed and fearful.[1]
 
 II.
 A.
 
 9
 Our scope of review is limited to the inquiry of whether the Secretary's findings are supported by "substantial evidence." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). In reviewing for substantial evidence, we must examine the record taken as a whole. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986).
 
 
 10
 Because the ALJ found that Cooley was never capable of returning to her past relevant work, the burden shifted to the Secretary to show by substantial evidence that she could perform work that existed in the national economy. See Buress v. Secretary of Health & Human Servs., 835 F.2d 139, 142 (6th Cir.1987) (per curiam); Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir.1987). The theoretical ability to engage in some type of work is not enough; the Secretary must make "a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." O'Banner v. Secretary of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir.1978). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical question,' but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.' " Varley, 820 F.2d at 779 (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984)).
 
 B.
 
 11
 Cooley asserts the Secretary did not show by substantial evidence that she could perform specific jobs. The pertinent part of the ALJ's opinion provides:
 
 
 12
 While the evidence of record does suggest the existence of a mental impairment going back to 1981, the undersigned finds that, given the minimal clinical findings in the record prior to May of 1984, the claimant's mental impairment, while severe, did not preclude her from performing a full range of unskilled work. While the testimony from the vocational expert and the medical findings in the record indicate that the claimant could not have performed her teaching job at that time and that her mental impairment probably precluded her from using or transferring her vocational skills, there is nothing in the record indicating that the claimant's mental impairment would have impacted upon her ability to perform unskilled work prior to May of 1984. The undersigned further finds that prior to May 1984, the claimant could have performed those unskilled ... jobs identified by the vocational expert, and that these jobs existed in significant numbers in the local economy.
 
 
 13
 J.A. at 232-33 (emphasis supplied).
 
 
 14
 Striking in the above passage is the ALJ's declaration that "there is nothing in this record indicating" that Cooley could not perform unskilled work prior to May 1984. This statement reflects a mistaken view of the case. As Buress and Varley make clear, the focus is not on what is absent from the record, but what evidence is in the record to prove that Cooley had the vocational qualifications to perform specific jobs.
 
 
 15
 The Secretary's proof of Cooley's residual functional capacity consisted of the testimony of vocational expert Michael Rosko, to whom the ALJ posed two hypothetical questions. The first question satisfies the Varley standard of accuracy, as the ALJ asked Rosko to consider a hypothetical forty-year-old woman who suffered through Cooley's undisputed physical and mental impairments--severe daily headaches, depression, withdrawal, impatience, irritability, frequent crying, hurling things about the house, insomnia, low self-esteem, nightmares, fear of teenagers, fear of telephone calls, frequent anxiety, seizures, poor memory, indecision, unpredictable moods, easily frustrated and overwhelmed, and severely impaired concentration. Assuming these impairments, the vocational expert testified it would be very difficult for the hypothetical woman to return to her past relevant work and that the impairment of her concentration "would probably preclude all jobs--skilled and unskilled for this hypothetical person."
 
 
 16
 Cooley attacks the second hypothetical question, in which the vocational expert was asked to assume the same impairments as above, except the woman's impairments did not substantially interfere with her concentration. He testified this second hypothetical woman could not return to her past relevant work, but "there would be some unskilled jobs that generally fall within the parameters of this hypothetical question." He testified there were approximately 20,000 strictly sedentary, unskilled jobs in the Detroit metropolitan area which she could perform, but if she tired easily and needed to lie down, she could not perform these jobs.
 
 
 17
 Cooley argues the second question is deficient because there is no evidence in the record that her concentration was intact between April 1981 and May 1984. She criticizes the question as failing to portray her individual physical and mental impairments accurately as required by Varley, and asserts it cannot serve as substantial evidence. We agree. A review of the medical evidence in this case indicates that from the beginning of the record, one of the most frequently discussed and documented of Cooley's impairments is her inability to concentrate, her inability to remember, her inability to focus sufficiently to utter complete sentences without needing to stop and reflect midway through.
 
 
 18
 We find other defects in the second hypothetical question as well. For example, the vocational expert assumed the hypothetical woman's continual and severe headaches were controlled by medication. But there is no evidence that Cooley's headaches have ever been controlled or relieved. Similarly, the vocational expert testified that the hypothetical woman could not perform unskilled jobs if she tired easily and needed to lie down during the day. It is undisputed that Cooley is easily overwhelmed, both mentally and physically, and must lie down often because of fatigue.
 
 
 19
 In our analysis it may appear that we are weighing evidence or resolving conflicts therein, which would be outside our scope of review. But the Varley inquiry of whether the Secretary produced substantial evidence that Cooley had retained the qualifications to perform specific jobs demands evaluation of the second hypothetical question, its failure to accurately portray Cooley's physical and mental impairments, and the resulting deficiency in the Secretary's evidence. The hypothetical questions the Secretary relies upon for substantial evidence must adhere to the claimant's actual mental and physical impairments; in this case, the second hypothetical question did not.[2]
 
 III.
 
 20
 For the foregoing reasons, the judgment of the district court is REVERSED, and this case is REMANDED with the instruction that Cooley's onset date of disability be fixed at April 6, 1981.
 
 
 
 *
 Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The deterioration of Cooley's mental abilities is also documented. In November 1981, she scored in the normal range of intellectual ability, with a full-scale IQ of 95, a performance IQ of 86, and a verbal IQ of 103. By September 1984, her intellectual abilities had declined to the below average range, with a full-scale IQ of 87, a performance IQ of 80, and a verbal IQ of 95. By February 1986, Cooley's intellectual abilities had deteriorated to the point where she could score only in the borderline range on intelligence tests, with a full-scale IQ of 72, a performance IQ of 67, and a verbal IQ of 78
 
 
 [2]
 Because we find the Secretary's decision lacked substantial evidence, we need not address Cooley's alternate argument that she was rendered disabled by an organic brain disorder rather than an anxiety-related disability