961 F.2d 1578
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Abdullah MANSOOB, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-1819.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1992.
 
 Before RALPH B. GUY, JR. and BATCHELDER, Circuit Judges, and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Abdullah Mansoob ("Mansoob"), appeals from the judgment of the district court affirming the decision of the defendant-appellee, the Secretary of Health and Human Services ("Secretary"), denying Mansoob's claim for social security disability benefits. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On October 9, 1987, Mansoob filed an application for social security disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act ("Act"). Mansoob has alleged that physical and mental impairments, principally lower back ailments and depression, render him disabled within the meaning of the Act. His application for benefits was denied initially and on reconsideration. Following a de novo rehearing before an Administrative Law Judge ("ALJ"), the ALJ found that Mansoob was not disabled and that, as testified to by a vocational expert ("VE"), there were a significant number of jobs within the region that Mansoob could perform. The decision in favor of the Secretary was denied review by the Appeals Council and thus became the final decision of the Secretary. This decision subsequently was appealed to the United States District Court for the Eastern District of Michigan. The Case was referred to a Magistrate Judge, who issued a Report and Recommendation recommending that the Secretary's motion for summary judgment be granted. The district court accepted the magistrate judge's recommendation and granted the Secretary's motion for summary judgment.
 
 
 3
 Mansoob, who was 44 years old at the time of the administrative hearing, was born in Yemen and came to the United States in 1973. After emigrating to the United States, he worked for a number of years in an automobile assembly plant as a press operator and an assembly worker. In 1980, while working, Mansoob injured his back. He received workers' compensation for this injury. In 1982, Mansoob returned to Yemen, where he remained for the next five years.[2] Mansoob returned to the United States in 1987. However, he has not held substantial, gainful employment since 1980.
 
 
 4
 Between the time he injured his back and the time of his return to Yemen, Mansoob was treated, and in numerous instances hospitalized, for back-related medical problems[3] and for mental treatment. One physician, Dr. Alfred Goldfaden, who treated Mansoob in 1980 and 1981, stated, in a letter dated June 12, 1981, that he considered Mansoob to be totally disabled.[4] However, Dr. Noal Rossow, a chiropractor who treated Mansoob in 1981, found that, despite experiencing lumbar pain, Mansoob could still perform sedentary work.
 
 
 5
 Mansoob also was hospitalized three times between 1981 and 1982 for depression. Each time, he improved with treatment. Following the last of these three hospitalizations, the treating physician, Dr. Mufid Al-Najjar, stated that Mansoob's prognosis was "[f]avorable if he continues with the treatment." Mansoob has undergone no treatment for depression or other mental impairments since 1982.[5]
 
 
 6
 During the first two years he was in Yemen, Mansoob received no physical or mental treatment. From 1984 through 1987, he received treatment every two weeks for lumbar back pain at a military hospital. Dr. Ibrahim Elaizri, a surgeon at the military hospital, stated, in a letter (translated from Arabic) dated July 19, 1987, his conclusion that Mansoob "must not be exposed to any type of functions that require heavy physical activities."
 
 
 7
 In 1987 and 1988, Mansoob was examined by three other physicians concerning his physical impairments. Dr. Everett, who had examined Mansoob in 1981 and reexamined him on September 8, 1987, found that there were no significant changes in Mansoob's physical condition since 1981. Dr. Everett concluded, following his 1987 examination, that Mansoob "remains disabled from the field of common labor." The medical evaluations of Drs. Sinha and Fares, who examined Mansoob on March 25, 1988, and April 26, 1988, respectively, were not altogether clear as to Mansoob's ability to perform different types of work.[6] The ALJ found that Dr. Fares' report was too conclusory to be probative and that both Dr. Sinha's and Dr. Everett's evaluations were consistent with Mansoob's ability at least to perform sedentary work.
 
 
 8
 Finally, with respect to the medical evidence, Mansoob was given a psychiatric evaluation by Dr. S.K. Cham in 1988. In his report of February 5, 1988, Dr. Cham diagnosed depression but also stated that Mansoob's prognosis is "fair with treatment."
 
 
 9
 At the administrative hearing, which was held on December 16, 1988, Mansoob testified that he could not bend or carry any objects. He also testified that his legs would become numb when he stood for long periods of time; that his back would bother him and he would become nervous if he sat for long periods; that he suffered from depression and sleeplessness; and that he had trouble concentrating. However, although the ALJ found that Mansoob was incapable of performing his past relevant work, he also expressly found Mansoob not credible. The ALJ additionally found that, despite suffering from back problems and depression, and despite having only a marginal education, Mansoob had the residual functional capacity to perform both the exertional and nonexertional (i.e., mental) work requirements of an unskilled, sedentary job. A vocational expert, Dr. Asa Brown, also testified at the hearing. On questioning by the ALJ, he stated that there were approximately 2,500 unskilled, sedentary jobs in the Detroit metropolitan area that Mansoob was capable of performing.
 
 II.
 
 10
 Our review of the Secretary's decision is limited. If the Secretary's factual findings are supported by substantial evidence, they are deemed conclusive. 42 U.S.C. § 405(g). The issue before us, therefore, is whether there exists substantial evidence to support the Secretary's decision to deny Mansoob's claim for benefits because he was not disabled within the meaning of the Act. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir.1990), quoting Kirk v. Secretary of Health & Human Serv., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, Kirk v. Heckler, 461 U.S. 957 (1983). Even if a reviewing court might resolve disputed factual issues differently than did the Secretary, the Secretary's decision will be upheld if, looking at the record as a whole, and taking into account whatever detracts from the weight of evidence supporting the Secretary's decision, there is substantial evidence supporting that decision. Moon, 923 F.2d at 1181. The reviewing court will not resolve conflicts in evidence or decide questions of credibility. Buress v. Secretary of Health & Human Serv., 835 F.2d 139, 140 (6th Cir.1987).
 
 
 11
 The burden ultimately rests with the claimant to prove entitlement to disability benefits. Moon, 923 F.2d at 1181. A claimant is disabled if, as a result of physical or mental impairment that is expected to result in death or has lasted or is expected to last for 12 continuous months, he cannot perform any substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905 (1991). However, if, as is the case here, the ALJ determines that the claimant is unable to return to his past relevant work, the burden shifts to the Secretary to prove that there is other substantial, gainful work that the claimant can perform.[7] Varley v. Secretary of Health & Human Serv., 820 F.2d 777, 779 (6th Cir.1987).
 
 
 12
 Mansoob contends that the record does not contain substantial evidence to support a finding that his mental and physical impairments, in combination, did not render him disabled. He acknowledges that, because his disabilities do not match any of those listed in the applicable regulations, the VE's testimony was required to establish that there were a substantial number of jobs he could perform. Mansoob, however, contends that the hypothetical posed to the VE by the ALJ factored in only Mansoob's physical impairments and not his mental impairments.[8] This contention lacks merit. It is clear from the ALJ's questions and the VE's responses that the hypothetical posed to the VE incorporated Mansoob's depression and his physical impairments. The ALJ did not, as Mansoob alleges, reference "unskilled jobs" in the hearing; rather, the ALJ referenced "unskilled sedentary jobs" (emphasis added) to which Mansoob was restricted because of his combination of mental and physical impairments.[9] The ALJ also made clear, in his Decision, that he had considered both mental and physical impairments and found that, taken together, they did not render Mansoob disabled. See also Gooch v. Secretary of Health & Human Serv., 833 F.2d 589, 591-92 (6th Cir.1987) (where the ALJ discusses multiple impairments individually and also references that "impairments" (plural) do not match the listings in the grid, this is sufficient to show that the claimant's impairments were considered in combination), cert. denied, Gooch v. Bowen, 484 U.S. 1075 (1988); Hardaway v. Secretary of Health & Human Serv., 823 F.2d 922, 927-28 (6th Cir.1987) (where one doctor testified that claimant could perform sedentary work, that testimony constituted sufficient evidence on which to base a hypothetical question to a vocational expert).
 
 
 13
 There clearly exists substantial evidence that Mansoob's mental and physical impairments, separately and in combination, did not constitute a disability. With respect to Mansoob's physical impairments, two treating physicians, Drs. Elaizri and Everett, found, respectively, that Mansoob could not perform heavy physical activities and that he was disabled from performing common labor. Although another treating physician, Dr. Goldfaden, found that Mansoob was totally disabled, Dr. Goldfaden did not explain in any detail what Mansoob's work-related physical limitations were. Furthermore, Dr. Goldfaden's opinion was directly contradicted by those of Drs. Everett and Eliazri and by the credibility determinations of the ALJ regarding Mansoob's subjective complaints of pain. See Hardaway, 823 F.2d at 927 ("[T]he determination of disability must be made on the basis of the entire record.... [B]ecause there was substantial evidence to the contrary, the Secretary was not bound by the opinions of the treating physicians...."); Duncan v. Secretary of Health & Human Serv., 801 F.2d 847, 852-54 (6th Cir.1986) (setting forth test under which an ALJ's finding that a claimant's subjective complaints of disabling pain are not credible will be upheld if medical evidence does not confirm the severity of the pain and the nature of the medical condition is such that it reasonably would not be expected to produce disabling pain). Therefore, substantial evidence supported the determination that Mansoob was not physically disabled.
 
 
 14
 There also existed substantial evidence that Mansoob's mental impairments were not disabling. He had been hospitalized only three times for mental treatment and had received a generally favorable prognosis following the last hospitalization; the last treatment for mental disabilities had occurred six years before the hearing; and a letter from Dr. Cham following a psychiatric examination of Mansoob on February 5, 1988, indicated that Mansoob was not suffering from any disabling mental impairments and that the prognosis regarding his depression was "fair with treatment."
 
 III.
 
 15
 We find that the hypothetical posed to the VE was properly formulated and supported by substantial evidence; that the ALJ's determination that Mansoob could perform a significant number of unskilled, sedentary jobs in the Detroit metropolitan area and, therefore, was not disabled was supported by substantial evidence; and that the credibility determinations made by the ALJ and accepted by the Secretary will not be disturbed. The Secretary's decision is affirmed.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge, sitting by designation
 
 
 [2]
 Mansoob apparently returned to Yemen in order to bring his family, who had remained behind in Yemen, to the United States. He contends that, at least in part because his workers' compensation payments were discontinued, he was financially unable to return to the United States until 1987
 
 
 [3]
 Mansoob's physical impairments, which included spondylolisthesis, spondylolysis, lumbar scoliosis, and possible arthritis, are discussed in some detail in the ALJ Decision
 
 
 [4]
 The ALJ discounted somewhat Dr. Goldfaden's evaluation of Mansoob because "[t]he doctor provided only a conclusion without spelling out any details of specific limitations."
 
 
 [5]
 Mansoob was examined by Dr. Dwight Schroeder on August 9, 1982. In his Evaluation of Mental Residual Functional Capacity, Dr. Schroeder concluded that Mansoob had no severe impairment
 
 
 [6]
 Dr. Fares did state, on Mansoob's Medical Examination Report, that he was to undergo "[n]o physical exertion."
 
 
 [7]
 The Secretary sometimes can meet this burden by using the medical-vocational guidelines, also known as the "grid." See 20 C.F.R. pt. 404, subpt. P, app. 2. However, where there does not exist an identical match between the claimant's characteristics and those on the grid, the grid is used only as a framework. See, e.g., Maziarz v. Secretary of Health & Human Serv., 837 F.2d 240, 244 (6th Cir.1987). In the present case, the ALJ found that Mansoob's characteristics did not match those on the grid. He, therefore, used the grid, supplemented by the VE's testimony, in reaching the conclusion that Mansoob was able to perform a significant number of jobs in the Detroit area. See id. at 246
 
 
 [8]
 The ALJ questioned the VE, in part, as follows:
 Q And are there unskilled sedentary jobs in the local economy?
 A Yes, sir. They're bench work primarily. In the tri-county area there's something less than 3,000, about 2,500 of them.
 Q Okay. And the claimant has alleged numerous vocationally limiting factors and they include primarily the depression that he has described and the problems that he has described with his back causing him inability to walk, sit or stand or bend, stoop, et cetera for any period of time. Were there other disabling factors that were described besides those two major ones?
 A Were you including his comments about having to rest during the day?
 Q Well, that would be--yeah, all right. That would certainly be included.
 A All right.
 Q Right. I should include that with the walking and sitting and standing and the requirement to rest during the day.
 A I just didn't know if it was included.
 
 
 [9]
 Mansoob also contends that, when asked by the ALJ to assume Mansoob's testimony was credible, the VE concluded that Mansoob was disabled. In fact, the ALJ asked the VE whether the alleged disabilities could affect Mansoob's ability to perform "work-related activities ...", depending on whether the symptoms actually existed and on their severity. Although the VE agreed that a determination of the existence and severity of symptoms could be determinative of Mansoob's ability to perform unskilled, sedentary jobs, the ALJ expressly found Mansoob's testimony concerning his disabilities not credible. Furthermore, as noted infra, although there was evidence to the contrary, there was substantial evidence in the record that Mansoob's mental and physical impairments did not prevent him from performing unskilled sedentary work