876 F.2d 103
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leonard G. ANDERSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5937.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1989.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Leonard G. Anderson appeals from the judgment of the district court in this action seeking review of the final decision of the Secretary of Health and Human Services (the Secretary) denying his application for a period of disability, disability insurance benefits and supplemental security income under the Social Security Act (the Act). 42 U.S.C. Sec. 405(g). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Leonard G. Anderson is a former coal mine roof bolter. He has a tenth grade education and no vocational training. Anderson was born on June 8, 1946 and at the time of his hearing before the Administrative Law Judge (ALJ) he was forty years old.
 
 
 3
 On January 8, 1986, claimant applied for a period of disability and disability insurance benefits under Title II of the Act. 42 U.S.C. Secs. 416(i), 423(d). In his application, claimant stated he became unable to work on May 18, 1982, due to a lower back injury. On July 30, 1986, claimant also applied for supplemental security income benefits under Title XVI of the Act. 42 U.S.C. Sec. 1381 et seq. Claimant's applications were denied initially and upon reconsideration. He requested a hearing before the ALJ. The hearing was held on March 17, 1987.
 
 
 4
 At the hearing, claimant gave the following testimony. He had worked as a roof bolter from 1968 until May 17, 1982 when he injured his back on the job. He had previously had back surgery and returned to work. Since the 1982 injury, he has "real bad" pain across his back and down his left leg. The pain subsides at rest and flares up when he engages in any activity. He takes medication for pain, and wears a back brace and uses a TENS unit most of the time. He drives three times a week; he does shopping once a week; and he visits friends once or twice a week. While his doctor told him to walk two miles a day, he only walks for five to seven minutes a day. Finally, he testified that he can only sit for a maximum of one half hour at a time due to the pain.
 
 
 5
 The ALJ also considered the following medical evidence.
 
 
 6
 In April of 1984, claimant spent a week in the Holston Valley Hospital and Medical Center. His chief complaint on admission was pain in the low back and left leg. A myelogram was performed and was essentially normal. A CT scan revealed a possible protrusion at L-5 and S-1. It was determined that the protrusion was not significant enough to require surgery. Claimant was given the usual nonoperative treatment for pain and released.
 
 
 7
 On March 13, 1986, Dr. Robert Strang, claimant's treating physician, reported his findings from an examination of claimant conducted on January 6, 1986. Dr. Strang noted stiffness of claimant's low back and straight leg raising was limited to 45 degrees on the left and 50 degrees on the right. He opined that at the time of the examination, he did not think claimant could do any work.
 
 
 8
 On April 4, 1986, claimant underwent a consultive examination for the Kentucky Division for Disability Determination. Dr. Charles Rutledge noted forward bending of 15 degrees and lateral and posterior bending of about 5 degrees. Straight leg raising was 10 degrees on the left and 40 degrees on the right. There was some paravertabral muscle spasm in the lower back and decreased circumference of the left leg and thigh. Dr. Rutledge noted that claimant "does seem to have disability, [but it] is difficult to evaluate exactly how much, due to his inability to relax and allow full examination."
 
 
 9
 The transcripts of the depositions of Dr. Robert Lowe and Dr. Joseph Rapier were also admitted into evidence.
 
 
 10
 In October of 1986, claimant was examined by Dr. Lowe. Dr. Lowe noted pain on straight leg raising and atrophy of the left thigh and calf. X-rays revealed a "normal lumbar spine for age." His final impression was post laminectomy syndrome with probable recurrent disc. Dr. Lowe rated claimant as having a 20% impairment of the body as a whole. He opined that he doubted that claimant would be able to return to manual labor, but qualified his opinion with a statement that he had "nothing firmly objective to state that because of this particular condition [claimant] cannot work in the future." Upon cross-examination, Dr. Lowe admitted that atrophy was an objective finding that supported claimant's subjective complaints of pain.
 
 
 11
 Dr. Rapier examined claimant on August 26, 1986. He noted that, upon examination, claimant constantly changed positions on the examining table and was unable to keep his left leg straight. He noted marked muscle spasm in the lower back and atrophy of the left leg. An X-ray revealed narrowing of the L5 S1 disc space. He noted that there were strong signs of a pinched nerve. Dr. Rapier found a functional impairment to the body as a whole of 23%. Under examination, Dr. Rapier noted that muscle spasm was an objective reaction to pain. He also stated that he did not believe claimant could perform a job which required repetitive bending, stooping, lifting, pushing and pulling.
 
 
 12
 On October 24, 1986, claimant was examined by Dr. Robert Sexton. Dr. Sexton noted marked spasm of the back and opined that claimant had a 25% permanent partial impairment to the body as a whole.
 
 
 13
 On June 30, 1986, Dr. Strang noted atrophy of the left leg and limited straight leg raising. While noting that claimant stated that he felt he could not do even light work, Dr. Strang opined that claimant was disabled for heavy work and could not return to work in the mines.
 
 
 14
 Two nonexamining physicians opined that claimant retained the residual functional capacity to perform light work.
 
 
 15
 Finally, in a letter dated May 11, 1987, Dr. Strang opined that claimant was still unable to work.
 
 
 16
 On May 20, 1987, the ALJ issued his decision finding claimant to be not disabled. In reaching this decision, the ALJ discounted claimant's subjective complaints of pain and found that he was capable of performing a full range of light work. See 20 C.F.R. Sec. 416.967 and 404.1567.[1] The ALJ applied the medical-vocational guidelines (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and found claimant not disabled. Claimant's request for review by the Appeals Council was denied and the ALJ's decision stood as the final decision of the Secretary.
 
 
 17
 Claimant sought judicial review in the district court. The district court affirmed the Secretary's decision and this timely appeal followed. Claimant argues that the Secretary did not properly consider his subjective complaints of pain, and that his finding that claimant could perform a full range of light work is not supported by substantial evidence.
 
 II.
 
 18
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam). "Thus the court may not try the case de novo nor resolve conflicts in evidence, nor decide questions of credibility." Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987).
 
 
 19
 Claimant argues that the ALJ improperly considered his allegations of disabling pain.
 
 
 20
 We review claimant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).
 
 
 21
 In reaching his determination, the ALJ made the following observations concerning claimant's complaints of pain: "In concluding that the claimant can perform light work consideration has been given to his allegations of pain. Although the evidence shows that the claimant does have some low back pain, the evidence is inconsistent with pain of the severity alleged by the claimant."
 
 
 22
 It is uncontested that there is objective evidence of an underlying medical condition--post laminectomy syndrome. The Secretary argues that there is substantial evidence to support the ALJ's finding that the pain is not of a severity to prevent the performance of a full range of light work.
 
 
 23
 Although several doctors noted atrophy of the left leg and muscle spasm in the back, which are objective evidence of pain, no doctor, with the exception of Dr. Strang, found claimant to be totally disabled due to his condition. Rather, he was found to have a disability ranging from 15 percent to 25 percent. Although Dr. Strang stated that claimant was unable to work in his March 1986 and May 1987 reports, his June 1986 report merely stated that claimant could not perform heavy work.[2] Furthermore, no doctor placed any restriction on claimant's ability to sit, stand, walk or lift light weights. Finally, x-ray evidence indicated that claimant's back was essentially normal and no surgery was recommended. Given the foregoing evidence, we believe the ALJ properly discounted claimant's subjective complaints of disabling pain.
 
 
 24
 Claimant also argues, generally, that the Secretary's decision is not supported by substantial evidence. Along with the medical evidence already discussed, the ALJ's finding that claimant could perform a full range of light work is supported by the testimony concerning claimant's daily activities. Claimant testified that he visited friends, drove his car and shopped several times a week. He stated that his doctor advised him to walk two miles a day and although he could not walk this distance, he did walk for five to seven minutes a day. Finally, he stated that he has no difficulty using his hands.[3]
 
 
 25
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Light work is defined as follows:
 (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 [2]
 Although opinions of a treating physician are to be accorded greater weight than the opinion of a physician who saw the claimant only once, Hephner v. Mathews, 575 F.2d 359, 362 (6th Cir.1978), such an opinion is not binding on the Secretary when there is substantial evidence to the contrary. Hardaway v. Secretary of Health and Human Servs., 823 F.2d 922, 927 (6th Cir.1987). Given Dr. Strang's opinions concerning claimant's ability to work and the other evidence in the record, we do not believe the ALJ improperly weighed the evidence
 
 
 [3]
 Claimant also argues that his pain is a nonexertional impairment which precludes an application of the grid. The mere assertion of a nonexertional impairment does not preclude application of the grid. Cole v. Secretary of Health and Human Servs., 820 F.2d 768, 772 (6th Cir.1987). "The claim of nonexertional impairment must indicate a significant or severe limitation precluding the ability [in this case to do light work]." Id. Because we believe the ALJ's finding that claimant's alleged pain did not prevent him from performing the full range of light work, the ALJ properly relied on the grid, notwithstanding claimant's allegation of a nonexertional impairment